2001 ND 52

**GLOBAL ACQUISITIONS, LLC, Plaintiff and Appellee,**

v.

**BROADWAY PARK LIMITED PARTNERSHIP, CNA Insurance d/b/a Firemen's Insurance Company of Newark, U.S. Bank, National Association, City of Fargo, a Municipal Corporation, Defendants,**

and

**REO Properties, LLC, Defendant and Appellant.**

No. 20000132.

Supreme Court of North Dakota.

March 20, 2001.

Joseph A. Turman, DeMars & Turman, Fargo, ND, for plaintiff and appellee.

Douglas A. Christensen (argued) and Margaret Moore Jackson (on brief), Pearson Christensen, Grand Forks, ND, for defendant and appellant REO Properties, LLC.

SANDSTROM, Justice.

[¶ 1] REO Properties, LLC ("REO"), appealed from a judgment evicting it from a commercial building in Fargo. We hold the trial court's findings of fact are adequate to support its conclusion REO did not meet its burden of establishing equitable estoppel against Global Acquisitions, LLC ("Global"), and we affirm.

I

[¶ 2] The Northern Pacific Railway Company ("Railway Company")[1] owned certain land in downtown Fargo. Herbst, Inc., rented the land and owned the commercial buildings situated on it. In 1983, Herbst, Inc., assigned its lessee rights under its amended 1968 lease with the Railway Company and transferred its interest in the commercial buildings to Broadway Park Limited Partnership. That partnership arranged M.I.D.A. (Municipal Industrial Development Act of 1955, N.D.C.C. ch. 40–57) bond financing with the City of Fargo and Fireman's Fund Insurance Company ("Fireman's Fund") on the com-

---

1. The Northern Pacific Railway Company merged to become Burlington Northern Railroad Company, which subsequently merged and became The Burlington Northern and Santa Fe Railway Company.

mercial buildings located on the property. The partnership defaulted on the loan, and in July 1992 Firemen's Fund redeemed the bonds and took a security interest in the buildings.

[¶ 3] In February 1999, REO purchased the underlying note and security interest from the Firemen's Fund. REO took over management of the buildings and began collecting rents from the building tenants of the commercial building.

[¶ 4] One of the building tenants is Old Broadway Corporation, which operates the Old Broadway Bar and Restaurant. In November 1999, Global purchased from the Railway Company the land upon which the Broadway Office Park is located. As part of the sale, the Railway Company assigned its lessor's interest in the ground lease on the property to Global. Old Broadway Corporation and Global have overlapping ownership. When Global acquired the land, Old Broadway Corporation discontinued paying its monthly building lease rent to REO for the Old Broadway Bar and Restaurant operation. REO demanded Old Broadway Corporation pay past due rent and future monthly rent of $5400.

[¶ 5] Broadway Park Limited Partnership failed to make ground lease payments to Global. On January 10, 2000, Global served a notice of termination of the ground lease upon the defendants in this action, including Broadway Park Limited Partnership and REO, for non-payment of rent. On February 11, 2000, Global served upon the defendants a notice of intent to evict.

[¶ 6] On February 28, 2000, Global's eviction action was tried to the court. Warren Ackley is the vice president and a shareholder of the Old Broadway Corporation, and he is a managing owner of Global. Todd Nedberg, the manager of REO, testified he and Ackley discussed Global purchasing the building in which the Old Broadway Bar and Restaurant was being operated and REO purchasing from Global some of the Broadway Office Park land.

Nedberg testified Ackley led him to believe Global and REO would offset the monthly rents Old Broadway Corporation owed REO against the ground lease rent REO owed Global. Ackley testified he and Nedberg did not discuss rent offsets and no deals were made.

[¶ 7] At the close of the trial, REO was allowed to amend its answer to include an affirmative defense of equitable estoppel, claiming Global should be precluded from asserting non-payment of the ground lease rent by REO, because Ackley misled Nedberg there was a rent offset agreement.

[¶ 8] The trial court found that REO, by reason of its security interest in the lease, "has taken some form of possession of the property and has been collecting rents from some of the tenants." This finding has not been challenged by REO. The trial court concluded it would not terminate "the security interest of REO Properties, LLC and whatever security interest REO Properties, LLC, has continues to exist." However, the trial court also concluded Global proved the tenants breached their agreement to pay rent under the ground lease, entitling Global to evict Broadway Park Limited Partnership and to evict REO from whatever possessory interest REO had assumed in the property. Judgment of eviction was entered, from which REO appealed.

[¶ 9] The trial court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 33–06–01. REO's appeal is timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 28–27–01.

II

[¶ 10] REO asserts the trial court failed to resolve the equitable estoppel issue and the court's findings of fact are inadequate to support any conclusion the court may have made regarding that issue.

A

[¶ 11] Under N.D.C.C. § 33–06–01(4), an eviction action to recover the possession of real estate is authorized when a lessee fails to pay rent for three days after the rent is due. An eviction action cannot be brought in the district court in connection with any other action, and no counterclaim can be interposed "except as a setoff to a demand made for damages or for rents and profits." N.D.C.C. § 33–06–04.[2] The trial court found REO failed to pay rent on the ground lease for three days after it was due, thereby entitling Global to a judgment of eviction under N.D.C.C. § 33–06–01(4).

[¶ 12] The doctrine of equitable estoppel is codified in N.D.C.C. § 31–11–06:

When a party, by that party's own declaration, act, or omission, intentionally and deliberately has led another to believe a particular thing true and to act upon such belief, that party shall not be permitted to falsify it in any litigation arising out of such declaration, act, or omission.

[¶ 13] To establish equitable estoppel, a plaintiff must show, on the part of the defendant: (1) conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are other than those which the defendant subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct will be acted upon by, or will influence, the plaintiff; and (3) knowledge, actual or constructive, of the real facts. *Matter of Helling*, 510 N.W.2d 595, 597 (N.D.1994). Reliance on the conduct of the party against whom equitable estoppel is asserted must be reasonable, and there must be some form of affirmative deception by that party. *Narum v. Faxx Foods, Inc.*, 1999 ND 45, ¶ 24, 590 N.W.2d

454. The party asserting equitable estoppel has the burden of proving the elements of that defense. *American Ins. Co. v. Midwest Motor Express, Inc.*, 554 N.W.2d 182, 188 (N.D.1996).

[¶ 14] REO, after acquiring a security interest in the building housing the Old Broadway Bar and Restaurant, began collecting rents from the tenants of the building. Global, after acquiring title to the real estate in December 1999 from the Railway Company, became the lessor of the ground lease under which REO and the other commercial building tenants had an obligation to pay land rent. Nedberg testified there was an agreement or understanding between himself and Ackley to offset rents:

Q: Okay. So you did specifically address setoff issues?

A: Yes.

Q: At the—is it your perception at the end of this agreement, had it gone through, that you would still be required to pay rent or would it merely be a setoff? Would you have to—

A: It's a setoff because the rent had already—they were going to subtract the amount that REO owed them and the balance would be coming to REO.

Q: Okay. What happened to that agreement?

A: When I met with Mr. Ackley on the 9th of February in his office like I'd mentioned early [sic], it was about a two or three hour meeting. His partner, Mr. Thorson, couldn't attend the meeting because he was on vacation, I believe, in Grand Caman [sic], so when I left, Warren said that he had to call Randy to come up with some of the answers of our discussions.

Q: Including the setoff?

A: Yes.

---

2. In 1991, this section was amended to require eviction actions be brought in district court rather than in county court. 1991 N.D. Sess. Laws ch. 326, § 139. In 1997, the legislature amended this section to allow the district court to stay execution of a judgment of eviction in a case of "substantial hardship." 1997 N.D. Sess. Laws ch. 290, § 1. These amendments are not relevant to the issues in this case.

. . . .

Q: ... After your meeting on the 9th, were there any other discussions regarding setoff?

A: No....

. . . .

Q: So you felt you had a deal that was setting off rents?

A: Yes.

The trial court then questioned Nedberg to clarify his testimony on this issue:

THE COURT: Okay, now, at one point you said that you had a deal but Mr. Ackley had to talk to Mr. Thorson. So that doesn't sound too much like a deal to me. That's (sic) sounds to me like some sort of a contingent agreement. Did you ever get any confirmation that Mr. Thorson consented to this deal?

A: The deal about the price of land or the offset?

THE COURT: Well see, I couldn't really tell because....

A: Okay.

THE COURT:—it sounded like it was all mixed together, all jumbled, mumbled and that we needed to talk to Mr. Thorson. Now nobody ever told me that Mr. Thorson ever agreed, so it sounds like a promise to make a promise, which of course, the law doesn't recognize as an enforceable contract. A contract in the future is not a contract. Horn book law....

[¶ 15] Later in the hearing, Ackley testified there was never any discussion or agreement about rent setoff:

Q: Was there any discussion of offsetting rent from the Old Broadway Corporation against railroad rent—railroad lease rent owed?

A: No, that was never discussed.

Q: Did you and Mr. Nedberg reach any agreements on January 27, 2000?

A: No, we did not.

The trial court also questioned Ackley about his testimony on this issue:

THE COURT: And there's no deal relating to the offset of any rents?

A: I'd never heard the word offset come up in our conversations at one time.

THE COURT: Anything that—do you understand what everybody means when they talk about setoff and offset?

A: I do understand it. It was never discussed.

THE COURT: Nothing like that idea or that concept was ever discussed?

A: No, it was not.

THE COURT: All right. It just never happened?

A: Never happened.

THE COURT: All right, I guess it can't get a lot plainer than that.

[¶ 16] Nedberg testified there were no discussions about rent setoffs after the February 9, 2000, meeting with Ackley. In a letter written by Nedberg to his attorney, Joseph Turman, on February 10, 2000, Nedberg states: "As you may be aware we have been talking with Warren Ackley about the land lease and the Old Broadway lease. *As of today, we have not come to any agreement so I am writing to inform you of the situation.*" (Emphasis added.)

[¶ 17] At the close of the hearing the court made the following relevant statements from the bench:

It is the opinion of the Court that Global is entitled to a Judgment of Eviction and to full restitution of the premises as regards REO Properties Limited Liability Company. Now REO has a security interest arising out of an assignment of certain lease obligations and certain contractual obligations. It is the opinion of the Court that whatever that security interest is, it continues to exist and that I am not empowered to foreclose that security interest.... I think that's another item for another day.

. . . .

[Global] has failed to carry a—the burden as to the amount of rent owed, but not the fact that rent is owed. The fact that rent is owed, is a sufficient basis for the eviction, but the failure to prove with specificity the amount of damages means that [Global] failed to carry the burden as to the amount of rent owed. Therefore, the claim for rent is dismissed without prejudice to the commencement of a subsequent record. The reason I'm dismissing it without prejudice is because frankly, *there is evidence of all sorts of side deals and contracts and I didn't find them to be of a sufficient basis to avoid the eviction.* ... I believe that that resolves all of the disputes. (Emphasis added.)

In its written findings, the trial court found REO "failed to pay rent for more than three days" and concluded Global was entitled to evict REO from the premises under N.D.C.C. § 33–06–01(4).

### B

▇▇▇ [¶ 18] In a bench trial, N.D.R.Civ.P. 52(a) requires the court to "find the facts specially." The rule also states, "[i]t will be sufficient if the findings of fact and conclusions of law are stated orally and recorded in open court following the close of the evidence or appear in an opinion or memorandum of decision filed by the court." The rule requires findings of fact and conclusions of law sufficient to enable the appellate court to understand the factual determination made by the trial court and the basis for its conclusions of law and the judgment entered thereon. *All Seasons Water Users v. Northern Improvement Co.*, 399 N.W.2d 278, 281 (N.D. 1987). The trial court must specifically state the subordinate facts upon which its ultimate factual conclusions rest, and this Court may examine a trial court's memorandum opinion or oral ruling for the purpose of determining the facts found by the trial court. *Federal Land Bank of St. Paul v. Lillehaugen*, 404 N.W.2d 452, 459 (N.D.1987).

▇▇▇ [¶ 19] While the trial court could have made more detailed factual findings

to support its rejection of REO's estoppel argument, we conclude the court's written findings, together with its oral pronouncements from the bench, are adequate to ascertain the basis for its ruling on the equitable estoppel defense. The court expressly stated it found no deals or agreements which would preclude Global's right to evict REO for non-payment of rent. Following the trial court's questioning of Nedberg, the court explained it was very clear there had been no agreement on rent setoff and concluded "you can't enforce an agreement to agree in the future." The court's findings are bolstered by Nedberg's own admission in his February 10, 2000, letter to his attorney that although there had been discussions regarding the leases, "we have not come to any agreement."

### III

[¶ 20] There is no persuasive evidence in the record of conduct by Global or Ackley, upon which Nedberg, as REO's agent, could have reasonably believed there was an agreement to offset Old Broadway Corporation's obligation to pay building rent to REO with REO's obligation to pay ground lease rent to Global. We conclude the trial court duly considered REO's equitable estoppel affirmative defense in this case. The trial court's findings of fact on this issue are adequate to support its conclusion REO failed to prove conduct by Global that would estop Global from asserting nonpayment of rent by REO to evict under N.D.C.C. § 33–06–01(4). We therefore affirm the judgment of eviction.

[¶ 21] GERALD W. VANDE WALLE, C.J., and WILLIAM A. NEUMANN, CAROL RONNING KAPSNER, JJ., concur.

[¶ 22] The Honorable MARY MUEHLEN MARING disqualified herself after oral argument and did not participate in this decision.