2010 ND 23

**Kathy NELSON, Plaintiff and Appellee**

v.

**Carol JOHNSON, Defendant
and Appellant.**

**No. 20090133.**

Supreme Court of North Dakota.

Feb. 17, 2010.

Jonathan T. Garaas, Fargo, N.D., for plaintiff and appellee.

Carol Johnson, self-represented, Fargo, N.D., defendant and appellant.

MARING, Justice.

[¶ 1] Carol Johnson appeals from a judgment evicting her from a townhouse she rented from Kathy Nelson and ordering Johnson to pay Nelson $520 in unpaid rent and late fees, $400 in attorney fees, and $130 in costs and disbursements. Johnson argues a three-day notice of intention to evict her was not properly served on her and the court erred in not making findings on her defenses of waiver and estoppel and in dismissing her counterclaim for retaliatory eviction. We affirm.

I

[¶ 2] Nelson leased a townhouse to Johnson in Fargo under a six month written lease from September 15, 2008, through March 15, 2009. The lease required Johnson to pay Nelson $495 per month in rent with payment due on the first day of each month and also required Johnson to provide a $400 security deposit.

[¶ 3] At the time the lease was executed, Johnson did not have a full-time per-

manent job, and she had difficulty paying her rent. In a notice dated December 8, 2008, Nelson provided Johnson with a three-day notice that her December rent was past due and that she had three days to pay the past-due amount of $495, plus $25 in late fees, or an eviction action would be commenced under N.D.C.C. ch. 33–06. According to Nelson, that notice was placed on the door of the leased premises. Johnson admitted she received that notice and thereafter paid the past-due rent and the late fee. According to Johnson, she was also late on her January 2009 rent payment because she did not procure full-time employment until the end of January, and she paid her rent for that month, plus a $25 late fee, in two installments, with payment of the final installment on January 23, 2009.

[¶ 4] Johnson did not pay her February 2009 rent on the first of February. She claimed she had a telephone conversation with Nelson the first week of February regarding the February rent. Johnson maintained she told Nelson that she hoped her February 6 paycheck would be sufficient to permit a partial rent payment and requested permission to contact Nelson to discuss payment after receiving that paycheck. According to Johnson, she called Nelson on February 9 to discuss the rent payment and left a message with Nelson's son, Chris Nelson. Johnson asserted she also called Kathy Nelson on February 10 and left a message on an answering machine, asking to pay the entire rent payment, with a late fee, from her February 20 paycheck. Johnson claimed she did not receive a response from Kathy Nelson and assumed that arrangement was acceptable.

[¶ 5] According to Kathy Nelson, she agreed to allow Johnson to pay half the February rent by February 9, with the remainder due the following week. On February 5, 2009, Kathy Nelson had Chris Nelson provide Johnson with a three-day notice of intention to evict Johnson under N.D.C.C. ch. 33–06. This record includes Chris Nelson's February 10, 2009, affidavit of personal service of the three-day notice of intention to evict, which states that Chris Nelson "is over the age of eighteen (18) years and is not a party to the foregoing action or interested therein," and that on February 5, 2009, at 6 p.m. he taped the notice on the door at Johnson's residence. Chris Nelson testified that he served the three-day notice on Johnson by going to her townhouse at 6 p.m. on February 5, knocking on the door, ringing the doorbell, and when no one answered, taping the notice on the door.

[¶ 6] Johnson asserts she did not receive the three-day notice, and by letter dated February 9, 2009, she provided Kathy Nelson with a notice of intention to vacate the townhouse on March 15, 2009, at the end of the six-month lease. Johnson claims she found her living conditions unacceptable shortly after the lease began, and she contacted the Fargo Police Department about "electronic hazards" in the townhouse, which she believed evidenced radio frequencies. Johnson also reported to the Fargo Police "tappings on metal pipes" in the townhouse, which she believed evidenced a form of surreptitious intrusion with surveillance devices.

[¶ 7] On February 13, 2009, a process server served Johnson with a summons and complaint in this eviction action by taping the summons and complaint to her door at 6:35 p.m. after he was unable to locate her. Johnson admitted that she heard the doorbell ring and later found the summons and complaint taped to her door

on February 13 and that she also received a copy of the summons and complaint by mail on February 21, 2009.

[¶ 8] Kathy Nelson's complaint alleged Johnson had failed to surrender the premises and sought to evict her and to collect overdue rent, late fees, attorney fees, and costs. The summons commanded Johnson to appear in court on February 25, 2009, to defend against the complaint. Johnson answered, alleging retaliatory eviction, waiver, and equitable estoppel. She claimed that, consistent with verbal agreements for prior rent payments, she had a verbal agreement with Kathy Nelson in early February 2009 for late payment of the rent, with a late fee, by February 20. Johnson also moved to dismiss the eviction action, claiming she did not receive the three-day notice of intention to evict and she did not learn about the eviction action until she found the summons and complaint taped to her door on February 13, 2009.

[¶ 9] On February 24, 2009, Johnson tendered a check for the February rent and late fee to Kathy Nelson's attorney. At the February 25 trial, the district court treated Johnson's motion to dismiss for claimed failure to serve the three-day notice as a defense to the eviction action and required Kathy Nelson to prove proper service of the notice. In an oral ruling, the court found Chris Nelson posted the three-day notice on Johnson's door after he was unable to find Johnson and service was complete with the posting. The court also found Johnson had failed to pay her February rent and late fees and was still in possession of the premises. The court explained the eviction action was not the proper venue for a claim for retaliatory eviction; there was no factual basis for Johnson's claims of constructive eviction;

and even if the parties agreed to a delayed rent payment until February 20, Johnson did not comply with the claimed agreement and pay her rent by then. The court granted Kathy Nelson judgment evicting Johnson from the premises and ordering her to pay Nelson $520 in unpaid rent and late fees, $400 in attorney fees, and $130 in costs and disbursements.

## II

[¶ 10] Johnson argues the district court did not have personal jurisdiction over her and erred in denying her motion to dismiss because Nelson failed to properly serve the three-day notice of intention to evict under N.D.C.C. § 33–06–02 and N.D.R.Civ.P. 4. She claims she did not receive the notice of intention to evict and argues the notice must be served in the same manner as a summons and complaint is served under N.D.R.Civ.P. 4.

[¶ 11] North Dakota has enacted forcible detainer statutes for eviction proceedings. *Goodman Inv. Inc. v. Swanston Equip. Co.*, 299 N.W.2d 786, 788 (N.D. 1980). During this proceeding, the statutory provisions for an eviction action were codified in N.D.C.C. ch. 33–06, but, effective August 1, 2009, have been recodified at N.D.C.C. ch. 47–32 without substantial change. *See* 2009 N.D. Sess. Laws ch. 65, §§ 4, 8. It is well established that these statutory provisions are intended to provide an expedited, inexpensive, and simple procedure to recover possession of real property. *See, e.g., Riverwood Commercial Park, LLC v. Standard Oil Co.*, 2005 ND 118, ¶ 6, 698 N.W.2d 478.

[¶ 12] The issues in this case involve the interpretation of those statutory procedures. Statutory interpretation is a question of law, which is fully reviewable

on appeal. *VND, LLC v. Leevers Foods, Inc.*, 2003 ND 198, ¶ 9, 672 N.W.2d 445. The primary purpose of statutory interpretation is to determine the intention of the legislation. *In re Estate of Elken*, 2007 ND 107, ¶ 7, 735 N.W.2d 842. Words used in a statute are given their plain, ordinary, and commonly understood meaning unless defined by statute or unless a contrary intention plainly appears. N.D.C.C. § 1–02–02. Statutes are construed as a whole and are harmonized to give meaning to related provisions. N.D.C.C. § 1–02–07. If the language of a statute is clear and unambiguous, "the letter of [the statute] is not to be disregarded under the pretext of pursuing its spirit." N.D.C.C. § 1–02–05. In construing statutes, we consider the context of the statutes and the purposes for which they were enacted. *Falcon v. State*, 1997 ND 200, ¶ 9, 570 N.W.2d 719 (citing *Van Klootwyk v. Arman*, 477 N.W.2d 590, 591–92 (N.D.1991) (holding "The interpretation of a statute is a fully reviewable question of law, and our primary objective is to ascertain the intent of the legislature by looking at the language of the statute itself and giving it its plain, ordinary and commonly understood meaning. Consideration should be given to the context of the statutes and the purposes for which they were enacted." (citations omitted)).

[¶ 13] Under N.D.C.C. § 33–06–01(4), recodified at N.D.C.C. § 47–32–01(4), an eviction action to recover possession of real property may be maintained when a lessee fails to pay rent for three days after the rent is due. Section 33–06–02, N.D.C.C., recodified at N.D.C.C. § 47–32–02, outlines specific procedures for service of both a summons and, if required, a notice of intention to evict:

In any action for eviction the time specified in the summons for the appearance of the defendant may not be less than three nor more than fifteen days from the date on which it is issued. If the person cannot be found in the county, of which the return of the sheriff or process server is prima facie proof, and service has been attempted at least once between the hours of 6:00 p.m. and 10:00 p.m. upon the filing of an affidavit of the plaintiff or the plaintiff's attorney stating that the defendant cannot be found or on belief that the defendant is not in this state and a copy of the summons has been mailed to the defendant at the defendant's last known address if any is known to the plaintiff, service of the summons may be made upon the defendant by the sheriff or process server posting the summons upon the door of the residential unit. In all cases arising under subsections 4, 5, 6, and 8 of section 33–06–01, three days' written notice of intention to evict must be given to the lessee, subtenant, or party in possession, before proceedings can be instituted. The notice may be served and returned as a summons is served and returned or, if the party cannot be found, then by the sheriff of the county or a process server posting the notice conspicuously upon the premises. Service by delivery of a copy of the summons to the defendant in person within the county must be made at least three days before the time fixed for the appearance of the defendant. Service elsewhere or personal service in any other mode must be made at least seven days before the time fixed for the appearance of the defendant.

[¶ 14] Under N.D.R.Civ.P. 81(a), special statutory procedures are excepted from the rules of civil procedure insofar as those statutory procedures are inconsistent with the rules. *Flex Credit, Inc. v. Winkowitsch*, 428 N.W.2d 236, 239–40

(holding time period of N.D.C.C. § 33–06–02 for appearance of defendant, rather than time to answer a complaint under N.D.R.Civ.P. 12, governs time within which tenant must appear and defend in eviction action). Rule 4(m), N.D.R.Civ.P., also provides that "[i]f a statute requires service and does not specify a method of service, service must be made under this rule."

[¶ 15] The plain language of N.D.C.C. § 33–06–02 outlines separate procedures for service of the summons and, if required, for service of the written notice of intention to evict. The specific language for service of the notice of intention to evict provides that "[t]he notice may be served and returned as a summons is served and returned or, if the party cannot be found, then by the sheriff of the county or a process server posting the notice conspicuously upon the premises." N.D.C.C. § 33–06–02. In *Goodman*, 299 N.W.2d at 788–90, this Court decided the three-day written notice to quit, which is now called a notice of intention to evict, replaced the common law demand for payment and permitted a tenant to pay rent within the three-day period to abate the action and avoid forfeiture for nonpayment of rent. *See McLain v. Nurnberg*, 16 N.D. 144, 147, 112 N.W. 243, 244 (1907) (stating if notice to quit is given before summons is issued and that fact is shown at trial, jurisdiction is not lost; giving notice is prerequisite before action can be properly instituted). Under *Goodman*, an eviction action may not be instituted against a tenant for non-payment of rent under N.D.C.C. § 33–06–01(4), unless the landlord gives the tenant a three-day notice of intention to evict and an opportunity to pay the past-due rent.

[¶ 16] The plain language of N.D.C.C. § 33–06–02 provides that service of the notice of intention to evict "*may* be served and returned as a summons is served and returned *or*, if the party cannot be found, then by the sheriff of the county or a process server posting the notice conspicuously upon the premises." The use of the word "may" in a statutory scheme is ordinarily understood as "permissive rather than mandatory and operates to confer discretion." *Matter of Adoption of K.S.H.*, 442 N.W.2d 417, 420 (N.D.1989). "The word 'or' is disjunctive in nature and ordinarily indicates an alternative between different things or actions." *State v. FreeEats.com, Inc.*, 2006 ND 84, ¶ 14, 712 N.W.2d 828. "Terms or phrases separated by 'or' have separate and independent significance." *Id.*

[¶ 17] The plain language of the provisions in N.D.C.C. § 33–06–02 for service of the three-day written notice of intention to evict indicates that use of the word "may" for service of the notice coupled with the use of the word "or" is permissive and authorizes the notice to be served by one of two different methods: either in the same manner as a summons is served and returned, or if the party cannot be found, then by the sheriff or a process server posting the notice conspicuously upon the premises. *See Deacon's Dev., LLP v. Lamb*, 2006 ND 172, ¶ 6, 719 N.W.2d 379 (notice of intention to evict may be served as summons is served). Under that statutory scheme, a landlord may have the notice of intention to evict served in the same manner as a summons is served, or, alternatively, by having the sheriff of the county or a process server post the notice conspicuously upon the premises if the tenant cannot be found. The plain language of N.D.C.C. § 33–06–02 specifies an alternative method for service of a notice of intention to evict within the meaning of N.D.R.Civ.P. 4(m) and N.D.R.Civ.P. 81(a),

which is different from the requirements of N.D.R.Civ.P. 4 and is consistent with the expedited nature of the statutory procedure for eviction actions. We therefore reject Johnson's argument that service of the notice of intention to evict must comply with the provisions of N.D.R.Civ.P. 4.

[¶ 18]   Here, Kathy Nelson had the notice of intention to evict served under the statutory procedure that authorizes service "if the party cannot be found, then by the sheriff of the county or a process server posting the notice conspicuously upon the premises." The historical progression for the enactment of that language provides some context for construing the language. That language, except for the clause "or a process server," was enacted in 1991 to authorize service of a notice of intention to evict, "if the party cannot be found, then by the sheriff of the county posting the notice conspicuously upon the premise." 1991 N.D. Sess. Laws ch. 364, § 1. The legislative history indicates the intention of that legislation was to facilitate service of a notice of intention to evict on individuals who may be working long hours or deliberately avoiding service and was preferred over certified mail because individuals may refuse to accept or pick up certified mail. *Hearing on H.B. 1481 Before House Judiciary Comm.*, 52nd N.D. Legis. Sess. (Jan. 29, 1991) (testimony of Glen Ellingsberg, North Dakota Sheriffs and Deputies Association, and Joe F. Farrell, North Dakota Apartment Association). The legislative history further reflects that posting the notice of intention to evict was intended to mean taping the notice to the doors of the premises, which may include front, side, and back doors. *Hearing on H.B. 1481 Before Senate Judiciary Comm.* 52nd N.D. Legis. Sess. (March 11, 1991) (testimony of Gerald Shafer, North Dakota Sheriffs and Deputies Association, and Joe F. Farrell).

[¶ 19]   In 1995, the clause for service of the notice of intention to evict was amended again to also authorize "a process server" to post the notice conspicuously upon the premises if the party cannot be found. 1995 N.D. Sess. Laws ch. 333, § 2. The legislative history for that amendment states the intention of the legislation was to alleviate a perceived burden on sheriffs by also authorizing the notice to be served by other process servers and further reflects an understanding that a process server is defined under N.D.R.Civ.P. 4. *Hearing on H.B. 1340 Before House Judiciary Comm.*, 54th N.D. Legis. Sess. (Jan. 23, 1995) (testimony of Dick Peck, North Dakota Peace Officers Association) and *Hearing on H.B. 1340 Before Senate Judiciary Comm.*, 54th N.D. Legis. Sess. (March 8, 1995) (statement of Senator Wayne Stenehjem).

[¶ 20]   Section 33–06–02, N.D.C.C., clearly requires some degree of diligence in ascertaining "if the party cannot be found." In 1997, additional language regarding service of the summons in an eviction action was enacted in N.D.C.C. § 33–06–02 for service of the summons by posting it upon the door of a residential unit and by mailing it to the defendant's last known address if the person cannot be found in the county. 1997 N.D. Sess. Laws ch. 289, § 1. In *Greene v. Lindsey,* 456 U.S. 444, 453–56, 102 S.Ct. 1874, 72 L.Ed.2d 249 (1982), the United States Supreme Court held that a statute authorizing service of process in an eviction action by posting the summons on the tenant's door did not satisfy minimum standards of due process where there was significant evidence that posting failed to provide actual notice to tenants because summonses were "not infrequently" removed by children or other tenants, where neither the statute nor the practice of process servers

made provisions for a second attempt at a time of day when the tenant was more likely to be at home, and where mailing the summons would provide constitutional assurance the State had not allowed its power to be invoked against a person who has had no opportunity to present a defense. However, *Greene*, at 445, dealt with service of the summons by posting it on the tenant's door and did not involve service of the more prefatory notice of intention to evict. Johnson admits she received a summons and complaint posted on her door and also mailed to her. She received actual notice of the action and had the opportunity to present her defenses at trial. Her arguments involve service of the notice of intention to evict, and *Greene* does not control the requirements for service of a notice of intention to evict.

[¶ 21] The posting language for the summons in the 1997 amendment to N.D.C.C. § 33–06–02 requires that "service has been attempted at least once between the hours of 6:00 p.m. and 10:00 p.m." before posting the summons is permitted. 1997 N.D. Sess. Laws ch. 289, § 1. We construe statutes as a whole to give meaning to related provisions. N.D.C.C. § 1–02–07. Therefore, we construe the language authorizing conspicuous posting of the notice of intention to evict "if the party cannot be found" in N.D.C.C. § 33–06–02 consistent with the purpose of eviction proceedings to provide an expedited, inexpensive, and simple procedure to recover possession of real property and with the language for posting a summons. We conclude the language requires that if service of the notice of intention to evict has been attempted at the premises at least once and the tenant cannot be found, service of the notice can be by posting conspicuously upon the premises.

[¶ 22] Here, this record includes a February 10, 2009, affidavit of service by Chris

Nelson which states that he is over the age of 18 years and is not a party to the action or interested therein and that he made service of the notice of intention to evict on February 5, 2009, at 6 p.m. at Johnson's townhouse by taping the notice on the door. *See* N.D.R.Civ.P. 4(i)(2) (proof of service established by server's affidavit of service). Chris Nelson testified at the hearing that he knocked on Johnson's door, rang the doorbell, and when Johnson did not answer the door, he taped the notice of intention to evict on her door. According to Johnson, February 5, 2009, was a Thursday, and she worked from 7 a.m. to 3:30 p.m. on weekdays and was ordinarily home after work. The district court found that Chris Nelson knocked on the door, rang the doorbell, and when Johnson did not answer the door, he taped the notice on her door. There is evidence in this record to support the district court's findings, and we conclude the court did not err in deciding that Johnson could not be found and that Chris Nelson posted the notice conspicuously upon the premises by taping it to the door.

[¶ 23] Johnson also claims service of the notice of intention to evict must be made by an authorized process server. She argues Chris Nelson was interested in the action and there was no evidence he was a person of legal age when the notice was served within the meaning of N.D.R.Civ.P. 4(d)(1).

[¶ 24] The language in N.D.C.C. § 33–06–02 authorizing "a process server" to post the notice of intention to evict conspicuously upon the premises if the party cannot be found was enacted in 1995. 1995 N.D. Sess. Laws ch. 333, § 2. The legislative history for that amendment evidences an understanding that a "process server" is defined under N.D.R.Civ.P. 4.

*Hearing on H.B. 1340 Before Senate Judiciary Comm.,* 54th N.D. Legis. Sess. (March 8, 1995) (statement of Senator Wayne Stenehjem).

[¶ 25] Under N.D.R.Civ.P. 4(d)(1), service may be made within the state "by any person of legal age not a party to nor interested in the action." As originally promulgated in 1957, N.D.R.Civ.P. 3(c)(1) provided that a summons may be served within the state "by any person of legal age not a party to the action." Effective August 1, 1971, the relevant language was amended to its present form in N.D.R.Civ.P. 4(d)(1) and is consistent with *Van Sickle v. McArthur,* 110 N.W.2d 281, 282–83 (N.D.1961) and *Froling v. Farrar,* 77 N.D. 639, 643–44, 44 N.W.2d 763, 765–66 (1950), in which this Court construed prior statutory language for service of a summons "by any other person not a party to the action." This Court declined to construe "party" in a technical sense and instead construed "party" to "include[ ] not only the named parties, but any person who had such an interest in the action that he might properly have been joined as a party plaintiff." *Van Sickle,* at 283 (citing *Froling,* 77 N.D. at 643–44, 44 N.W.2d at 765–66). *See also In re Heilman,* 39 B.R. 492, 494 (Bankr.D.N.D.1984) (holding garnishee in garnishment action was interested person and not qualified under N.D.R.Civ.P. 4(d) to personally serve papers upon debtor). We construe "interested" person in N.D.R.Civ.P. 4(d)(1) consistent with *Van Sickle* and *Froling* to mean a person who has such an interest in the action that the person might properly have been joined as a party plaintiff.

[¶ 26] For purposes of service of a notice of intention to evict, we also construe "legal age" to be eighteen years old. *See* N.D.C.C. § 14–10–02 ("All persons eighteen years of age and over are adults."); F.R.Civ.P. 4(c)(2) ("Any person who is at least 18 years old . . . may serve a summons and complaint.").

[¶ 27] Although Johnson claims Chris Nelson may not have been "legal age" when the notice of intention to evict was served on February 5, 2009, his February 10, 2009, affidavit of personal service states he was over the age of 18 and was not a party to nor interested in the action. Chris Nelson testified he had served three-day notices in the past for Kathy Nelson. There is sufficient evidence in this record to support a conclusion that Chris Nelson was a person of "legal age." There was also evidence that the property was owned by Kathy Nelson, her husband, and her husband's parents and that Chris Nelson did not have an ownership interest in the property. In the absence of any contrary evidence, Chris Nelson is not a person who might properly have been joined as a party plaintiff in this action, and we reject Johnson's claim that Chris Nelson's status as Kathy Nelson's son makes him interested in the action within the meaning of N.D.R.Civ.P. 4(d)(1). On this record, we conclude the service of the notice of intention to evict complied with the requirements of N.D.C.C. § 33–06–02 and satisfied the condition precedent for instituting the eviction action.

[¶ 28] Johnson does not contest the service of the summons and complaint on her, and the district court obtained personal jurisdiction over her by service of the summons and complaint. *See* N.D.R.Civ.P. 4(b)(4) ("A court of this state may acquire personal jurisdiction over any person through service of process as provided in this rule or by statute."). We therefore reject Johnson's claim that the court did not have personal jurisdiction over her.

[¶ 29] Johnson argues the district court erred in failing to make specific findings on her defenses of waiver and equitable estoppel. She argues Nelson agreed to defer payment of the February rent, plus a late fee, until February 20, 2009, which constitutes a waiver and equitable estoppel.

[¶ 30] An eviction action cannot be brought in district court with any other action, and no counterclaim can be interposed "except as a setoff to a demand made for damages or for rents and profits." N.D.C.C. § 33–06–04, recodified at N.D.C.C. § 47–32–04. In the context of an eviction action, this Court has recognized that a landlord may be equitably estopped from claiming a tenant failed to pay rent in a timely manner. *Global Acquisitions, LLC v. Broadway Park Ltd.*, 2001 ND 52, ¶¶ 11–19, 623 N.W.2d 442. Equitable estoppel is codified in N.D.C.C. § 31–11–06, which provides that "[w]hen a party, by that party's own declaration, act, or omission, intentionally and deliberately has led another to believe a particular thing true and to act upon such belief, that party shall not be permitted to falsify it in any litigation arising out of such declaration, act, or omission." Estoppel is ordinarily a question of fact. *Peterson Mech., Inc. v. Nereson*, 466 N.W.2d 568, 571 (N.D.1991). *See Global Acquisitions*, at ¶¶ 18–20. A waiver requires a voluntary and intentional relinquishment of a known right or privilege. *Peterson Mech.*, at 571. Waiver is also generally a question of fact. *In re Peterson's Dogs*, 2008 ND 225, ¶ 8, 758 N.W.2d 749.

[¶ 31] In an action tried without a jury, a district court's findings of fact are governed by the clearly erroneous standard of review under N.D.R.Civ.P. 52(a).

*Elken*, 2007 ND 107, ¶ 4, 735 N.W.2d 842. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support the finding, or if, on the entire record, we are left with a definite and firm conviction the district court made a mistake. *Doeden v. Stubstad*, 2008 ND 165, ¶ 19, 755 N.W.2d 859. A district court's choice between two permissible views of the weight of the evidence is not clearly erroneous, and simply because we may have viewed the evidence differently does not entitle us to reverse the district court. *Brandt v. Somerville*, 2005 ND 35, ¶ 12, 692 N.W.2d 144. On appeal, we do not reweigh conflicts in the evidence, and we give due regard to the district court's opportunity to judge the credibility of the witnesses. *Id.*

[¶ 32] Rule 52(a), N.D.R.Civ.P., requires findings of fact and conclusions of law sufficient to enable an appellate court to understand the factual determinations made by the district court and the basis for its conclusions of law and the judgment. *Global Acquisitions*, 2001 ND 52, ¶ 18, 623 N.W.2d 442. A district court must specially state the subordinate facts upon which the ultimate factual conclusions rests, and we may examine the court's written decision or oral ruling for purposes of determining the facts found by the court. *Id.*

[¶ 33] Here, the district court found that even if the parties made an agreement for late payment on February 20, 2009, Johnson did not make the payment by that date and her claimed defenses were not persuasive. The court essentially found that even if the parties had modified their agreement with an accord and satisfaction, Johnson failed to satisfy their modified agreement. Whether or not

there has been an accord and satisfaction is ordinarily a question of fact. *Herb Hill Ins., Inc. v. Radtke,* 380 N.W.2d 651, 654 (N.D.1986). The court's findings are sufficient to understand the basis for its decision. *Global Acquisitions,* 2001 ND 52, ¶¶ 18–19, 623 N.W.2d 442. On the record before the district court, we conclude the court did not clearly err in finding Johnson failed to comply with the purported agreement to waive payment until February 20. We conclude the court did not err in disposing of Johnson's claims of waiver and equitable estoppel.

## IV

[¶ 34] Johnson argues the district court erred in rejecting her claim for retaliatory eviction. She claims this eviction action was begun immediately after her February 9, 2009, notice to Kathy Nelson that she intended to vacate the property upon the expiration of the six-month lease on March 15, 2009. Johnson also suggests the eviction action was initiated because she had contacted local officials about possible violations of laws, including surveillance laws.

[¶ 35] The district court decided this eviction action was not the appropriate venue for a claim for retaliatory eviction. Section 33–06–04, N.D.C.C., specifies that "[n]o counterclaim can be interposed in [an eviction] action, except as a setoff to a demand made for damages or for rents and profits." *See Riverwood Commercial Park, LLC v. Standard Oil Co.,* 2007 ND 36, ¶ 16, 729 N.W.2d 101. The purpose of the provision precluding counterclaims in eviction actions is " 'to get a speedy determination of possession without bringing in any extraneous matters.' " *Anderson v. Heinze,* 2002 ND 60, ¶ 11, 643 N.W.2d 24 (quoting *Nomland Motor Co. v. Alger,* 77

N.D. 29, 31, 39 N.W.2d 899, 900 (1949)). In an eviction action, " 'the right to the possession of the real estate is the only fact that can be rightfully litigated unless damages or rent is claimed.' " *Anderson,* at ¶ 11 (quoting *Vidger v. Nolin,* 10 N.D. 353, 354, 87 N.W. 593, 593 Syllabus ¶ 3 (1901)). We conclude Johnson's counterclaim for retaliatory eviction is not appropriate in this action, because it does not involve a setoff for damages or for rents and profits.

## V

[¶ 36] We affirm the judgment.

[¶ 37] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS and CAROL RONNING KAPSNER, JJ., concur.

SANDSTROM, Justice, dissenting.

[¶ 38] I respectfully dissent.

[¶ 39] The majority suggests that the three-day notice and opportunity to pay before summary eviction is a mere formality. It is not. It was a required prerequisite to this eviction. *Goodman Inv., Inc. v. Swanston Equipment Co.,* 299 N.W.2d 786, 789 (N.D.1980). In *Goodman,* this Court quoted favorably the South Dakota Supreme Court in *Dakota Hot Springs Co. v. Young,* 9 S.D. 577, 70 N.W. 842, 843 (1897):

No court, as far as our researches have extended, has held that without a demand of rent from the tenant in some form, a forfeiture could be predicated upon a failure to pay the same. Such a law would be so manifestly unjust, and would lead to such serious consequences, that we cannot give to our statute such a construction, unless required to do so by language clearer and more pointed than

that used in the law we are now considering.... A construction, however, that makes the service of a notice to quit a demand, thereby relieving the landlord from the necessity of making the common-law demand, and which gives the tenant the three days in which to pay his rent after such demand, it seems to us, carries into effect the clear intent of the lawmaking power.

*Id.* (quoting *Dakota Hot Springs Co. v. Young,* 9 S.D. 577, 70 N.W. 842, 843 (1897)). This Court then held:

We cannot conclude that by enacting our forcible-entry and detainer statutes the Legislature intended such a radical departure from the common law wherein prior to forfeiture a demand for payment had to be made under rather strict procedures to a situation in which no demand for payment is required and no opportunity to pay the rent is permitted. Rather, we agree with the rationale of the South Dakota Supreme Court as expressed in *Dakota Hot Springs Co., supra,* that the purpose of the notice to quit replaces the demand for payment and permits the tenant to pay the rent within the three-day period contained in the notice.

*Id.*

[¶ 40] The majority says, at ¶ 6, "Johnson asserts she did not receive the three-day notice." But it was not a mere assertion as suggested by the majority. It was a finding of the court.

[¶ 41] The method employed in this case for both giving the three-day notice and for serving the summons and complaint—taping on the door—as a matter of law was available only "if the party cannot be found." N.D.C.C. § 33–06–02 (recodified at N.D.C.C. § 47–32–02). The majori-

ty asserts, at ¶ 20, with no citation to any authority that this requires "some degree of diligence." But the overwhelming body of law requires *diligence,* not "some degree" of diligence.

[¶ 42] The United States Supreme Court held in *Greene v. Lindsey,* 456 U.S. 444, 102 S.Ct. 1874, 72 L.Ed.2d 249 (1982):

But whatever the efficacy of posting in many cases, it is clear that, in the circumstances of this case, merely posting notice on an apartment door does not satisfy minimum standards of due process. In a significant number of instances, reliance on posting pursuant to the provisions of 454.030 results in a failure to provide actual notice to the tenant concerned. Indeed, appellees claim to have suffered precisely such a failure of actual notice. As the process servers were well aware, notices posted on apartment doors in the area where these tenants lived were "not infrequently" removed by children or other tenants before they could have their intended effect. Under these conditions, notice by posting on the apartment door cannot be considered a "reliable means of acquainting interested parties of the fact that their rights are before the courts." *Mullane,* 339 U.S. [306], at 315 [70 S.Ct. 652, 94 L.Ed. 865 (1950) ].

Of course, the reasonableness of the notice provided must be tested with reference to the existence of "feasible and customary" alternatives and supplements to the form of notice chosen. *Ibid.* In this connection, we reject appellants' characterization of the procedure contemplated by 454.030 as one in which "'posting' is used as a method of service only as a last resort." Brief for Appellants 7. To be sure, the statute requires the officer serving notice to

make a visit to the tenant's home and to attempt to serve the writ personally on the tenant or some member of his family. *But if no one is at home at the time of that visit, as is apparently true in a "good percentage" of cases, posting follows forthwith. Neither the statute, nor the practice of the process servers, makes provision for even a second attempt at personal service, perhaps at some time of day when the tenant is more likely to be at home. The failure to effect personal service on the first visit hardly suggests that the tenant has abandoned his interest in the apartment such that mere pro forma notice might be held constitutionally adequate. Cf. Mullane,* 339 U.S., at 317 –318 [70 S.Ct. 652].

*Greene,* at 453–55, 102 S.Ct. 1874 (emphasis added) (footnotes omitted).

[¶ 43] In addition to finding that Johnson did not receive the notice, the district court concluded that one knock on the door or one ring of the doorbell was all that the law required to permit service by posting and that it had no discretion but to find the notice was legally sufficient. This does not meet the requirements of *Greene.*

[¶ 44] To effectuate service of the notice by posting, N.D.C.C. § 33–06–02 requires that the person "cannot be found." As the vast case law holds, "cannot be found" requires diligence in trying to find the person. *See, e.g.,* 62B Am.Jur.2d *Process* § 144 (2005) (stating the validity of statutes providing for substituted service of process may be held to depend on the fact that the defendant, after due diligence, cannot be found and noting if personal service can be effected by the exercise of reasonable diligence, substituted service is not to be resorted to). The majority interprets the legislative history as reflecting a desire to make the process easier for landlords and concludes that because no diligence is easier for the landlord, diligence is not required. *See* ¶ 21.

[¶ 45] This reasoning is seriously flawed.

[¶ 46] The legislature has instructed that words in a statute "be understood in their ordinary sense, unless a contrary intention plainly appears." N.D.C.C. § 1–02–02. The words "cannot be found" mean "cannot be found." "Cannot be found" requires diligence. *See, e.g.,* 62B Am. Jur.2d *Process* § 144 (2005). Diligence requires a "continual effort to accomplish something." *Black's Law Dictionary* 488 (8th ed. 2004). Diligence means "constant and earnest effort to accomplish what is undertaken; persistent exertion of body or mind." *Random House Dictionary of the English Language* 554 (2d ed. 1987).

[¶ 47] The majority's analysis also casts doubt on the meaning of at least thirty other statutes that use the term "cannot be found": N.D.C.C. §§ 4–12.2–24, 8–03–09, 9–12–28, 10–15–49, 10–19.1–123, 10–32–127, 10–33–114, 11–19.1–15, 11–20–06, 18–11–28, 23–06–21.1, 23–21–10, 23–35–09, 25–03.1–08, 25–03.1–36, 26.1–06.1–44, 27–20–23, 28–21–06, 30.1–20–14, 30.1–28–09, 32–18–03, 32–22–09, 36–11–20, 38–08–04.4, 41–03–35, 41–03–37.1, 44–09–06, 47–19–23, 54–44.4–09, and 60–01–39.

[¶ 48] The district court interpreted the law to give it no choice but to treat the ineffective notice as effective:

THE COURT: Yes. On February 5th at about 6:00 p.m., that he went to the location, that he attempted to find Ms. Johnson—*he made an attempt to find her,* knocked on the door, rang the doorbell, that he did not find her, and therefore, that he then posted on the front door.

That is—it's clear that that is conspicuous, nailing to the front door is conspicuous. *Ms. Johnson says she didn't receive, I believe her that she didn't receive it.* However, the act of service is complete upon the posting on the front door. *In this particular case, the legislature gives me no discretion. When that was posted on the front door, that service is complete. If it then blew off later, it doesn't matter. The service was complete under the law.*

(Emphasis added.)

[¶ 49] The district court erred as a matter of law.

[¶ 50]  I would reverse and remand.

[¶ 51]  DALE V. SANDSTROM