2010 ND 122
**AURORA MEDICAL PARK, LLC,**
**Plaintiff and Appellee**

v.

**THE KIDNEY AND HYPERTENSION CENTER, PLC, and Khaled M. Rabadi, Defendants and Appellants**

and

**All others in possession, Defendant.**
**No. 20090331.**

Supreme Court of North Dakota.

June 30, 2010.

Krista Lyn Andrews, Fargo, N.D., for plaintiff and appellee.

Theodore Thomas Sandberg (argued) and Alan Martin McDonagh (on brief), Grand Forks, N.D., for defendants and appellants.

VANDE WALLE, Chief Justice.

[¶ 1] The Kidney and Hypertension Center, PLC ("the Center"), and Khaled M. Rabadi appealed from a judgment evicting them from their Grand Forks premises and awarding Aurora Medical Park, LLC ("Aurora"), $234,583.51 for unpaid rent, expenses, attorney and other fees, and costs and disbursements. We affirm, concluding the district court did not err in limiting the Center and Rabadi's efforts to explore Aurora's corporate authority to bring this eviction action.

I

[¶ 2] In 2006, Rabadi, who is a doctor, and the Center leased medical suites on property owned by Aurora. Rabadi is an owner and member of the board of directors of Aurora. In September 2009, Aurora brought an action to evict the Center and Rabadi from the premises, claiming they failed to pay the agreed upon rent.

[¶ 3] The Center and Rabadi did not file an answer to the complaint, but they did appear at an eviction hearing. At the beginning of the hearing, the attorney for the Center and Rabadi requested "an offer of proof from [Aurora] to show that they have corporate authorization to go forward with this particular eviction." The district court allowed Aurora to present testimony from the commercial property manager of its management company, Property Resources Group, LLC. The manager testified Property Resources Group's management agreement with Aurora gave it authority to proceed with the eviction action, and that she had conferred with Aurora's president about bringing the action. The management agreement, signed on behalf of Aurora by its president, was entered into evidence and provided:

> Owner authorizes Manager to institute legal action either in the name of Owner or in the name of the Manager and at Owner's expense to enforce the collection of rent or other income for the property and to evict residents for nonpayment of rent or material violation of the lease. In connection therewith, Manager may engage an attorney at Owner's expense.

The attorney for the Center and Rabadi argued Aurora "has not provided enough" to show corporate authority to bring the lawsuit because it had not offered evidence that Aurora's board of directors had for-

mally authorized the eviction action. The court rejected the contention:

> [The management agreement] does give Property Resources Group the authority to proceed on an eviction action. It is signed off by the president of Aurora Medical Park, and if the president exceeded his authority, I don't think that's before the Court at this point, so we'll proceed.

[¶ 4] Aurora presented evidence of the amount of unpaid rent and other expenses owed, which was not disputed by the Center and Rabadi. Instead, the attorney for Rabadi made an offer of proof that Aurora's president, without authorization from the board of directors, acted in "bad faith" in allowing the eviction action to proceed because Rabadi had earlier hired a law firm to audit Aurora's operations and "significant irregularities" were allegedly found. Aurora agreed to allow the Center and Rabadi 30 days to vacate the premises, rather than the maximum of five days allowed under N.D.C.C. § 47–32–04. The district court evicted them from the premises, allowed them until October 31, 2009, to vacate, and awarded Aurora a judgment of $234,583.51 for unpaid rent, expenses, attorney and other fees, and costs and disbursements.

[¶ 5] During the pendency of the appeal, Aurora moved this Court to dismiss the appeal as moot because the Center and Rabadi had vacated the premises by October 31, 2009. We denied the motion in an unpublished order. *See, e.g., Guardianship/Conservatorship of Van Sickle,* 2005 ND 69, ¶ 13, 694 N.W.2d 212 (this Court will not dismiss as moot issues that are capable of repetition, yet evading review).

## II

[¶ 6] The Center and Rabadi argue the district court erred in allowing Property Resources Group to bring the eviction action on behalf of Aurora "without a showing of corporate authority."

[¶ 7] Formerly codified at N.D.C.C. ch. 33–06, the eviction statutes have been recodified since August 1, 2009, at N.D.C.C. ch. 47–32 "without substantial change." *Nelson v. Johnson,* 2010 ND 23, ¶ 11, 778 N.W.2d 773. Under N.D.C.C. § 47–32–01(4), an eviction action may be brought to recover the possession of real estate if a lessee "fails to pay rent for three days after the rent is due." In *Riverwood Commercial Park, LLC v. Standard Oil Co., Inc.,* 2005 ND 118, ¶ 6, 698 N.W.2d 478, this Court explained:

> Section [47–32–02], N.D.C.C., provides for an expedited procedure, with the defendant allowed between three and fifteen days to appear and defend in the action. *Minto Grain* [*LLC v. Tibert,* 2004 ND 107, ¶ 8, 681 N.W.2d 70]; *Anderson* [*v. Heinze,* 2002 ND 60, ¶ 11, 643 N.W.2d 24]; *Stonewood Hotel Corp., Inc. v. Davis Dev., Inc.,* 447 N.W.2d 286, 289 (N.D.1989). If the court finds for the plaintiff, the court must enter judgment granting immediate restitution of the premises to the plaintiff, but the court may delay execution in case of hardship for a reasonable period not exceeding five days. N.D.C.C. § [47–32–04]. The statute strictly limits the parties' ability to combine the eviction with other claims and precludes the defendant from interposing a counterclaim, except as a setoff to the plaintiff's claim for damages, rent, or profits. N.D.C.C. § [47–32–04]. The proceeding is limited to a speedy determination of the right to possession of the property, without bringing in extraneous matters. *See Minto Grain,* at ¶ 8; *VND, LLC v. Leevers Foods, Inc.,* 2003 ND 198, ¶ 11, 672 N.W.2d 445; *Anderson,* at ¶ 11. The purpose of the statute is to provide an inexpensive, expeditious, and simple

means to determine possession. *Leevers Foods,* at ¶ 18.

An action for eviction invokes a court's equitable jurisdiction. *H–T Enters. v. Antelope Creek Bison Ranch,* 2005 ND 71, ¶ 6, 694 N.W.2d 691.

[¶ 8] The Center and Rabadi's attempt to turn this summary eviction action into litigation over the authority of Aurora's president to sanction the action, or his alleged "bad faith" in allowing its commencement, is not permitted by N.D.C.C. § 47–32–04. "[T]he right to the possession of the real estate is the only fact that can be rightfully litigated unless damages or rent is claimed." *Anderson v. Heinze,* 2002 ND 60, ¶ 11, 643 N.W.2d 24 (internal quotes and citation omitted); *see also Nelson,* 2010 ND 23, ¶ 35, 778 N.W.2d 773 (counterclaim for retaliatory eviction is not appropriate in eviction action "because it does not involve a setoff for damages or for rents and profits"); *Minto Grain,* 2004 ND 107, ¶ 10, 681 N.W.2d 70 (because appellants' arguments did not affect whether they were entitled to possession, those arguments were not legal defenses to eviction action); *United Bank of Bismarck v. Trout,* 480 N.W.2d 742, 749 (N.D. 1992) (whether bank had wrongfully retained funds did not affect appellants' right to possession and could not be litigated in eviction action, but alleged wrongful forfeiture could be pursued in proper action against bank).

[¶ 9] Moreover, under North Dakota law the president of a corporation generally has the authority to sign contracts on behalf of the corporation. *See* N.D.C.C. §§ 10–19.1–53(1)(d) and 47–10–05.1. "As a general rule, a corporation's board of directors need not formally vote to authorize the institution of a suit brought by the corporation." *Gemstar Ltd. v. Ernst & Young,* 185 Ariz. 493, 917 P.2d 222, 230 (1996), and cases cited there-

in. "In the absence of proof to the contrary, a corporate president's authority to institute litigation will be presumed, so that a mere demurrer or exception raised in the pleadings and questioning such authority will not of itself put the matter in issue." 18B Am.Jur.2d *Corporations* § 1361, at 361 (2004) (footnote omitted); *see also* 9 William Meade Fletcher, *Fletcher Cyclopedia of the Law of Corporations* § 4216, at pp. 14–16 (2008 Rev. Vol.) ("Absent a contrary provision in the corporate charter or bylaws or in a resolution of directors, the president may have presumptive authority to institute and defend suits in the corporate name.... Generally, it is presumed that an attorney has the necessary authority when he or she enters an appearance for the corporation, and it is also presumed that a suit instituted by the officers was authorized.") (footnotes omitted). Here, to the extent the Center and Rabadi's argument is focused on Aurora's possessory rights, *see Anderson,* 2002 ND 60, ¶ 11, 643 N.W.2d 24, Aurora presented evidence sufficient to make a prima facie showing that Property Resources Group had the authority to bring the eviction action in the name of and on behalf of the corporation. The Center and Rabadi's claims that there nevertheless was no corporate authority to bring the action and that the president acted in "bad faith" may be pursued in another proceeding, but those claims were not properly asserted in this action. *See Nelson,* 2010 ND 23, ¶ 35, 778 N.W.2d 773; *Anderson,* at ¶ 13.

[¶ 10] The Center and Rabadi do not otherwise challenge any of the district court's rulings concerning the merits of the eviction action or the amount of damages awarded. We conclude the court did not err in evicting the Center and Rabadi from the premises and in awarding Aurora damages in the amount of $234,583.51.

## III

[¶ 11]   The Center and Rabadi argue the five-day maximum period for vacating the premises allowed under N.D.C.C. § 47–32–04, which was extended to 30 days in this case by agreement of Aurora, violates public policy when applied to a medical clinic.

[¶ 12]   Public policy is declared by the Legislature's action, *Warner and Co. v. Solberg*, 2001 ND 156, ¶ 20, 634 N.W.2d 65, and the Legislature, through its recent recodification of the eviction statutes, has continued to declare the public policy to be a five-day limit on stays of special executions under N.D.C.C. § 47–32–04. "[I]t is for the Legislature to weigh conflicting public policy arguments and to enact accordingly." *Ficek v. Morken*, 2004 ND 158, ¶ 36, 685 N.W.2d 98 (VandeWalle, C.J., concurring specially). The public policy arguments made by the Center and Rabadi are issues for the Legislature to consider, and we decline the invitation to rewrite N.D.C.C. ch. 47–32.

## IV

[¶ 13]   In view of our disposition of this case, it is unnecessary to address other issues raised. The judgment is affirmed.

[¶ 14] CAROL RONNING KAPSNER, MARY MUEHLEN MARING, DANIEL J. CROTHERS, and DALE V. SANDSTROM, JJ., concur.