2012 ND 105

**MINNKOTA POWER COOPERATIVE, INC., Petitioner and Appellee**

v.

**Thomas ANDERSON, Lori Due, Griffton Hughes, Rhonda Hughes, Rachel Weed, Ronald Lamm, Kelly Lamm, Michelle Lamm, Amy Lamm, Steven Flick, David Flick, Michael Flick, Darlene Hankison, Charles Krahler and Margie Krahler, Respondents.**

**Steven Flick, David Flick, Michael Flick, and Darlene Hankison, Appellants.**

**Minnkota Power Cooperative, Inc., Petitioner and Appellee**

v.

**Todd Axt, Doris Axt, Ione Frueh, Garrett Frueh, Ricky Frueh, Cheryl Sadowsky, Roy Jr. Kensmoe, Pearl Kensmoe, Kent Kensmoe, Kenneth Rauser, Launa Rauser, Roger Strobel, Julie Strobel, Weckerly F.L.P., Respondents.**

**Weckerly F.L.P., Appellant.**

Nos. 20120017, 20120024.

Supreme Court of North Dakota.

May 21, 2012.

Tami L. Norgard (argued), Fargo, ND, and Jade M. Rosenfeldt (on brief), Moorhead, MN, for petitioner and appellee.

Christopher M. McShane (argued) and John T. Shockley (on brief), West Fargo, ND, for appellants.

VANDE WALLE, Chief Justice.

[¶ 1]  Darlene Hankison, Michael Flick, Steven Flick, David Flick, landowners in Wells County, and Weckerly F.L.P., a landowner in Sheridan County, (collectively, "appellants") appealed from a Wells County district court judgment and a Sheridan County district court order that denied their motions to dismiss and granted Minnkota Power Cooperative, Inc.'s petitions to enter their property to conduct testing and surveys.  We affirm.

## I.

[¶ 2] The facts are not in dispute. Minnkota is a Minnesota cooperative engaged in the generation and transmission of electricity and authorized to do business in North Dakota as a foreign cooperative. Minnkota proposed to build a 250–mile power transmission line from Center, North Dakota to Grand Forks, North Dakota. Minnkota sought option agreements to obtain right-of-way easements from most of the property owners along the route. Minnkota asked the property owners who declined the option agreements for access to the property to do testing and surveying so it could determine if the route was feasible and appropriate. Several landowners did not grant permission, and Minnkota filed petitions for access to the properties in Wells County and Sheridan County. Appellants filed motions to dismiss Minnkota's petitions, asserting Minnkota is not in the category of persons entitled to seek eminent domain under North Dakota law. The district courts held separate hearings on the matter.

[¶ 3] The Wells County district court denied Hankison's and the Flicks' motion to dismiss Minnkota's petition and granted the petition to allow access to the properties. The Wells County court held that for purposes of a petition to enter land for surveying and testing, Minnkota only needed to show it was in charge of a public use or it was in the category of persons entitled to seek eminent domain. The court determined Minnkota was in charge of a public use and also was entitled to seek eminent domain. The court held that N.D.C.C. § 10–13–03(7) specifically grants electric cooperatives in North Dakota the power of eminent domain and N.D.C.C. ch. 10–15 extends this authority to foreign cooperatives. The court also held, under N.D.C.C. § 49–22–07, the right of eminent domain attaches to the construction of energy lines once the Public Service Commission has issued a certificate of site compatibility, and Minnkota was issued such a certificate.

[¶ 4] The Sheridan County district court denied Weckerly F.L.P.'s motion to dismiss the petition and granted Minnkota's petition to enter Weckerly F.L.P.'s property. The Sheridan County court held, under N.D.C.C. § 10–15–52, a foreign cooperative is entitled to all rights, exemptions, and privileges of a cooperative organized for the same purposes under the laws of this state when it is issued a certificate of authority from the secretary of state. Minnkota was issued a certificate of authority from the secretary of state, and it is organized to provide power to its members. Because North Dakota electric cooperatives have authority to use eminent domain, the court determined Minnkota also has the power to use eminent domain. The court also observed that N.D.C.C. § 32–15–02(4) allows the power of eminent domain to be exercised for power transmission lines, and Minnkota's petition to enter Weckerly F.L.P.'s property was based on a proposed power transmission line.

## II.

[¶ 5] In its petition, Minnkota sought and was granted access to appellants' property under N.D.C.C. § 32–15–06, which provides:

> In all cases when land is required for public use, the person or corporation, or the person's or corporation's agents, in charge of such use may survey and locate the same, but it must be located in the manner which will be compatible with the greatest public benefit and the least private injury and subject to the provisions of section 32–15–21. Whoever is in charge of such public use may enter upon the land and make examina-

tions, surveys, and maps thereof, and such entry constitutes no claim for relief in favor of the owner of the land except for injuries resulting from negligence, wantonness, or malice.

We have held that a party seeking to enter land for surveying and testing under section 32–15–06 must show it is in the category of persons entitled to seek eminent domain. *Square Butte Electric Coop. v. Dohn*, 219 N.W.2d 877, 883 (N.D.1974). "The time, manner, and occasion of the exercise of the power of eminent domain are wholly in the control and discretion of the legislature, except as it is restrained by the constitution of the state." *Johnson v. Wells Cnty. Water Res. Bd.*, 410 N.W.2d 525, 527 (N.D.1987). The power of eminent domain "lies dormant in the state until the Legislature by specific enactment designates the occasion, modes, and agencies by which it may be placed in operation." *Id.* at 527–28 (quoting *City of Pryor Creek v. Pub. Serv. Co. of Okla.*, 536 P.2d 343, 345–46 (Okla.1975)).

[¶ 6] We do not agree with the Wells County district court's conclusion that the right to seek eminent domain attaches to the construction of an energy transmission line simply because the Public Service Commission issues a certificate of site compatibility. However, the dispositive issue on appeal is whether Minnkota, a foreign cooperative authorized to do business in North Dakota, is entitled to have and exercise the power of eminent domain under N.D.C.C. §§ 10–13–03(7) and 10–15–52. Statutory interpretation is a question of law, which is fully reviewable on appeal. *Nelson v. Johnson*, 2010 ND 23, ¶ 12, 778 N.W.2d 773. The primary goal when interpreting a statute is to determine the legislature's intent from the language of the statute. *Sorenson v. Felton*, 2011 ND 33, ¶ 8, 793 N.W.2d 799. Words in a statute are to be given their ordinary and commonly understood meaning unless defined by statute or a contrary intention is clearly evident. N.D.C.C. § 1–02–02. Statutes are construed as a whole and are harmonized to give effect to related provisions. *Sorenson*, at ¶ 8 (citing N.D.C.C. § 1–02–09.1). If a statute's wording is clear and unambiguous, "the letter of it is not to be disregarded under the pretext of pursuing its spirit." N.D.C.C. § 1–02–05.

[¶ 7] Section 10–13–03, N.D.C.C., provides in part:

In addition to the powers granted by the general law governing cooperatives, electric cooperatives have the power:

. . . .

7. Subject to chapter 32–15, to have and exercise the power of eminent domain to acquire private property for its use, such right to be paramount except as to property of the state or any political subdivision thereof.

Appellants argue this statute only applies to North Dakota cooperatives organized under N.D.C.C. ch. 10–13. Because Minnkota is a foreign cooperative entitled to do business in the state under N.D.C.C. ch. 10–15, appellants assert Minnkota does not enjoy the power to seek eminent domain under N.D.C.C. § 10–13–03(7).

[¶ 8] The authority granted to foreign cooperatives under North Dakota law is found at N.D.C.C § 10–15–52: "Upon issuance of the secretary of state's certificate of authority, a foreign cooperative is entitled to all rights, exemptions, and privileges of a cooperative organized for the same purposes under the laws of this state." Looking first to the plain language of the statute and giving each word its ordinary meaning, section 10–15–52 clearly and unambiguously grants qualifying foreign cooperatives the same rights as similar North Dakota cooperatives. We will not construe a statute to create an ambiguity or exception when none exists in

the statute's plain language. *See State v. Paulson*, 2001 ND 82, ¶ 9, 625 N.W.2d 528 ("Where the terms of a statute are positive and unambiguous, exceptions not made by the Legislative Assembly cannot be read into the law") (quoting *Walsvik v. Brandel*, 298 N.W.2d 375, 377 (N.D.1980)). Minnkota has been issued a certificate of authority by the secretary of state. Because North Dakota electric cooperatives are entitled to seek eminent domain under N.D.C.C. § 10–13–03(7), Minnkota is entitled to the same right and privilege. N.D.C.C. § 10–15–52.

[¶ 9] Appellants argue, however, that N.D.C.C. § 10–15–52 does not grant Minnkota the power to seek eminent domain because electric cooperatives, governed by N.D.C.C. ch. 10–13, are exempt from the application of N.D.C.C. ch. 10–15 under section 10–15–60, which states:

> All foreign and domestic cooperatives are governed by the provisions of this chapter except that they shall not apply to cooperatives governed by title 26 or by chapters 6–06, 10–12, 10–13, 36–08, or 49–21, except when the laws governing such associations clearly adopt or refer to any provisions of this chapter or refer to provisions of the general law governing cooperatives.

If a statute is ambiguous, we may look to extrinsic aids, such as the legislative history, to determine the legislature's intent. N.D.C.C. § 1–02–39(3). The legislative history of N.D.C.C. § 10–15–60 provides guidance on the legislature's intent in enacting the statute.

[¶ 10] Section 10–15–60, N.D.C.C., was first enacted in 1957. 1957 N.D. Sess. Laws ch. 104, § 1. The original version of the statute read:

> All foreign and domestic cooperatives are governed by the provisions of this chapter with the following exceptions:

> 1. All domestic cooperatives existing before July 1, 1957 are not subject to this Act (chapter) until after June 30, 1959, but any such cooperative may elect to become subject to this Act (chapter) before July 1, 1959 by adopting an amendment to its articles making such election;

> 2. All foreign cooperatives admitted to do business in this state before July 1, 1957 are not subject to this Act (chapter) until after June 30, 1959 but any such cooperative may elect to become subject to the provisions hereof at any time by making application to the secretary of state for issuance of an amended certificate of authority to that effect;

> 3. Application of this Act (chapter) to associations existing before its enactment does not affect property rights of stockholders or members in such associations which were accrued or established at the time of such enactment, nor does it affect any liability enforceable at such time, nor does it affect the validity or enforceability of contracts existing before such enactment;

> 4. The provisions of this Act (chapter) shall not apply to cooperatives governed by title 26 or by chapters 6–06, 10–12, 10–13, 36–08, or 49–21 of the Code, except where the laws governing such associations clearly adopt or refer to any provisions of chapter 10–15 or refer to provisions of the general law governing cooperatives.

N.D.R.C. § 10–1560 (1957). N.D.R.C. § 10–1560(1)–(3) were later deleted as obsolete in the republication of the Code. *North Dakota Century Code Revisor's Notes* 15. Section 10–1560, N.D.R.C., was enacted after the Legislative Research Committee conducted a study of general business corporation law and cooperative statutes and prepared revisions of those

laws. Based on its study, the Legislative Research Committee reported:

[C]ooperatives are governed by several overlapping, ambiguous and uncoordinated statutes. Complications are present under the law because of incorporation by reference to the general corporation law, the possibility of choosing organization for the same purpose under one of two or more different cooperative chapters, and the use of skeleton statutory language governing some special cooperatives.

A cooperative partakes of many of the characteristics of a general corporation—in fact, as a legal entity a cooperative is in the same status. Yet in operation, and under public policy, cooperatives are considerably different from corporations.

. . . .

The recommended legislation is in two bills: House Bill 540 and House Bill 541. House Bill 540 is the general cooperative law, taking the form of amendment of Chapter 10–15, which is the broadest law under which cooperatives are now organized. . . . Existing cooperatives shall retain their present status until July 1, 1959, or until they make suitable election otherwise, whichever is earlier, after which time they will be governed by the general cooperative law. These different effective dates are necessary to provide orderly transition to the new law, and to provide a trial period with a legislative session intervening for correction or inadequacies which may become apparent in applying the statute.

House Bill 541 contains a series of amendments to statutes which govern special cooperatives such as electric, telephone, grazing, and mutual aid cooperatives, likewise not effective until July 1, 1959. These amendments delete duplicate provisions applicable to those special cooperatives which are to be in the general cooperative law, making those cooperatives subject to the general statutes except for particular provisions retained which are peculiar to their businesses.

*Report of the North Dakota Legislative Research Committee* 16 (1957). In its description of House Bill 541, the Legislative Research Committee noted, "This bill amends chapters 10–12 (Mutual Aid Cooperatives), 10–13 (Electric Cooperatives), and 36–08 (Grazing Associations) to delete provisions duplicated in the General Cooperative Act, and to retain special provisions needed by their special operation in addition to being governed by the proposed general cooperative law." *Id.* at 81–82.

[¶ 11] Section 10–1560, N.D.R.C., exempted electric cooperatives from application of chapter 10–15 to allow them to structure themselves to fit the needs "peculiar to their businesses." *Report of the North Dakota Legislative Research Committee* at 16. N.D.C.C. ch. 10–15 regulates the governance of cooperatives in general, and N.D.C.C. ch. 10–13 cooperatives are exempt from chapter 10–15 regulation because the governance of electric cooperatives is found within chapter 10–13. Section 10–15–60, N.D.C.C., does not restrict the powers afforded to electric cooperatives under N.D.C.C. § 10–15–52 but rather recognizes that N.D.C.C. ch. 10–13 allows electric cooperatives to be organized to fit the needs of their particular operation.

[¶ 12] Appellants argue that even if N.D.C.C. ch. 10–15 applies to electric cooperatives, the definition of "cooperative" within chapter 10–15 prevents N.D.C.C. § 10–15–52 from granting Minnkota the right to seek eminent domain under N.D.C.C. § 10–13–03(7). Section 10–15–01(2), N.D.C.C., defines "cooperative" as

"an association incorporated under this chapter," and "association" is defined as "both cooperatives and foreign cooperatives" under N.D.C.C. § 10–15–01(1). Section 10–15–52, N.D.C.C., grants foreign cooperatives "all rights, exemptions, and privileges of a cooperative organized for the same purposes under the laws of this state." Appellants argue the use of "cooperative" in section 10–15–52 and "under this chapter" in the definition of cooperative prevent section 10–15–52's grant of power from applying to cooperatives organized under chapter 10–13; because the power of eminent domain is granted to electric cooperatives in chapter 10–13, they argue Minnkota is not entitled to have and exercise the power of eminent domain.

[¶ 13] Appellants' argument is unpersuasive. Section 10–13–01, N.D.C.C., provides: "A cooperative *may be* organized and operated as an electric cooperative *under the general law governing cooperatives and this chapter* for the purpose of engaging in rural electrification[.]" (Emphasis added). Contrary to appellants' argument, an electric cooperative is not limited to one chapter in its operation; rather, it may choose to operate under both N.D.C.C. chs. 10–13 and 10–15. *See* N.D.C.C. § 10–13–01.

■ [¶ 14] Under N.D.C.C. § 10–15–52, a foreign cooperative enjoys the same rights as a North Dakota "cooperative organized for the same purposes *under the laws of this state.*" (Emphasis added). Appellants seek to limit the term "under the laws of this state" to the term "under this chapter" through the definition of "cooperative" at N.D.C.C. § 10–15–01(2). "We presume the legislature did not intend an absurd or ludicrous result or unjust consequences, and we construe statutes in a practical manner, giving consideration to the context of the statutes and the purpose for which they were enacted." *State v.*

*Meador,* 2010 ND 139, ¶ 11, 785 N.W.2d 886 (quoting *State v. Brown,* 2009 ND 150, ¶ 15, 771 N.W.2d 267); N.D.C.C. § 1–02–38(3). We decline to adopt appellants' interpretation that foreign cooperatives are granted significant authority in chapter 10–15 that allows them to exercise the power of eminent domain through chapter 10–13, only to have that authority nullified by a statute defining the term "cooperative" as used in chapter 10–15.

■ [¶ 15] Statutes conferring the power of eminent domain are to be strictly construed and "that construction must be adopted which leaves the owner with the greatest possible estate, in the event of uncertainty or indefiniteness in the statute." *Wallentinson v. Williams Cnty.,* 101 N.W.2d 571, 575 (N.D.1960). However, if a statute is clear and unambiguous, we will not strain to read uncertainty or indefiniteness into the statute to make it ambiguous. *See* N.D.C.C. § 1–02–05 (the letter of an unambiguous statute is not to be disregarded under the pretext of pursuing the statute's spirit).

[¶ 16] The district courts did not err in concluding that Minnkota is entitled to seek the power of eminent domain under N.D.C.C. §§ 10–13–03(7) and 10–15–52. In light of our disposition of this issue, it is unnecessary to reach the remaining arguments raised in this appeal.

### III.

[¶ 17] We affirm the Wells County district court judgment and the Sheridan County district court order.

[¶ 18] JOHN C. McCLINTOCK, D.J., BRUCE E. BOHLMAN, S.J., DANIEL J. CROTHERS and MARY MUEHLEN MARING, JJ., concur.

[¶ 19] The Honorable JOHN C. McCLINTOCK, D.J., and the Honorable

BRUCE E. BOHLMAN, S.J., sitting in place of KAPSNER, J., and SANDSTROM, J., disqualified.