2017 ND 45

**ENVIRONMENTAL DRIVEN SOLUTIONS, LLC, Plaintiff and Appellee**

v.

**DUNN COUNTY, a North Dakota Municipality, Defendant and Appellant**

v.

**North Dakota Industrial Commission, Intervenor and Appellee**

**No. 20160100**

Supreme Court of North Dakota.

Filed 3/7/2017

Zachary E. Pelham (argued) and Meredith L. Vukelic (on brief), P.O. Box 400, Bismarck, N.D. 58502–0400, for plaintiff and appellee.

Ariston E. Johnson, Assistant State's Attorney, P.O. Box 1260, Watford City, N.D. 58854–1260, for defendant and appellant.

Hope L. Hogan, Office of the Attorney General, 500 North Ninth Street, Bismarck, N.D. 58501–4509, for intervenor and appellee.

Aaron G. Birst, 1661 Capitol Way, Bismarck, N.D. 58502–0877 and Karen S. Prout, Assistant State's Attorney, P.O. Box 2047, Williston, N.D. 58802, for amicus curiae North Dakota Association of Counties.

Stephanie E. Dassinger, 410 East Front Avenue, Bismarck, N.D. 58504, for amicus curiae North Dakota League of Cities.

John W. Morrison Jr., P.O. Box 2798, Bismarck, N.D. 58502–2798, for amicus curiae North Dakota Petroleum Council.

Crothers, Justice.

[¶ 1] Dunn County appeals from a judgment declaring the Industrial Commission has exclusive jurisdiction to determine the

location of oil and gas waste treating plants. We affirm, concluding the County lacks the power to veto the Commission's approval of the location for an oil and gas waste treating plant.

I

[¶ 2] In August 2013 Environmental Driven Solutions, LLC ("EDS") received a permit from the Commission for a waste oil treating plant in Dunn County. The permit allowed EDS "to recycle and treat waste crude oil obtained from drilling operations, pit oil, swab oil, acid oil, tank bottoms, oil spills, pipeline breaks, skim oil from saltwater disposal tanks, and other waste crude oil related to oil and gas exploration and production." The permit also notes "treating plants must comply with all applicable local, state, and federal laws and regulations." Notice of the hearing on EDS's application was published in the Bismarck Tribune and in a Dunn County newspaper. Some area landowners objected in writing to EDS's application, but representatives of the County did not object or appear at the hearing.

[¶ 3] After EDS began constructing the treating plant, the County issued notices of "violation and order to abate," claiming the treating plant could not be constructed on the site because the property was zoned "Rural Preservation," and "Salt Water Storage Tank & similar facilities" were not an "allowed use." EDS applied to the County to rezone the property, but the County denied the application because its Land Development Code requires 120 acres to rezone and EDS's property comprised only 118.58 acres. EDS then applied for a conditional use permit, but the County denied the application.

[¶ 4] EDS brought this action against the County seeking a declaratory judgment that the Commission, rather than the County, had jurisdiction to determine the siting of its treating plant. The Commission was allowed to intervene in the proceedings. The district court granted summary judgment, concluding the Commission had exclusive jurisdiction to determine the location of the oil and gas waste treating plant and the County's zoning ordinances were preempted by state law.

II

[¶ 5] The County argues the district court erred because the Commission does not have the power to permit oil waste treating facilities that are barred by a county's "properly-enacted zoning ordinance and land use comprehensive plan."

[¶ 6] We review summary judgments in declaratory judgment actions under the same standard as other cases. See Ramsey Cty. Farm Bureau v. Ramsey Cty., 2008 ND 175, ¶ 5, 755 N.W.2d 920. In State ex rel. Stenehjem v. FreeEats.com, Inc., 2006 ND 84, ¶ 4, 712 N.W.2d 828, we explained:

"Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from the undisputed facts, or if the only issues to be resolved are questions of law. Summary judgment is appropriate if the issues in the case are such that resolution of any factual disputes will not alter the result. Whether the trial court properly granted summary judgment is a question of law that we review de novo on the entire record."

(Citations omitted). Because preemption analysis is largely a matter of statutory interpretation, summary judgment generally is an appropriate method for resolving the issue. See id., at ¶¶ 5, 6, 22.

[¶ 7] Our caselaw addressing preemption in the context of state and local

laws and ordinances mirrors federal preemption analysis. The three forms of federal preemption are "express preemption, field preemption, and conflict preemption." FreeEats, 2006 ND 84, ¶ 23, 712 N.W.2d 828. Describing express preemption and field preemption we have said a county ordinance contravenes state law "(1) when there is an explicit state law or rule restraining the county's authority" and "(2) when the industry or activity involved is already subject to substantial state control through broad, encompassing statutes or rules." State v. Brown, 2009 ND 150, ¶ 21, 771 N.W.2d 267; see also N.D.C.C. § 11–09.1–05(5). We described conflict preemption in Mountrail Cty. v. Hoffman:

> "Although counties have general authority to enact zoning ordinances, see N.D.C.C. § 11–33–01; Shaw v. Burleigh County, 286 N.W.2d 792, 795 (N.D. 1979), a local governing body cannot validly enact a zoning ordinance that contravenes federal or state law. See State ex rel. City of Minot v. Gronna, 79 N.D. 673, 697, 59 N.W.2d 514, 531 (1953); 1 E. Yokley, Zoning Law and Practice § 3–12 (1978); see also County of Hoke v. Byrd, 107 N.C.App. 658, 421 S.E.2d 800, 805 (1992)."

2000 ND 49, ¶ 7, 607 N.W.2d 901; see also Ramsey Cty., 2008 ND 175, ¶ 25, 755 N.W.2d 920.

■ [¶ 8] Judicial decisions often are not clear which type preemption is being considered. However, those decisions are clear that a local governing body's actions and decisions may be preempted by state or federal law, or by the actions and decisions of state or federal agencies. See, e.g., Green Mountain R.R. Corp. v. Vermont, 404 F.3d 638, 644 (2nd Cir. 2005) (preconstruction permit requirement of state's environmental land use law was preempted by federal law because it "necessarily interfere[d]" with railroad's ability to construct facilities); Wilderness Soc'y v. Kane Cty., 560 F.Supp.2d 1147, 1159 (D. Utah 2008) vacated on other grounds, 632 F.3d 1162 (10th Cir. 2011) (county's ordinance and actions to manage routes on federal land "actually conflict[ed]" with federal law and were preempted); Bosscher v. Twp. of Algoma, 246 F.Supp.2d 791, 800–01 (W.D. Mich. 2003) (township's denial of special use permit to build radio tower was not preempted by federal commission's declaratory ruling); Ogden Envtl. Servs. v. City of San Diego, 687 F.Supp. 1436, 1448 (S.D. Cal. 1988) (city's denial of conditional use permit to operate incineration facility was impermissible under federal preemption principles because federal agency had approved and granted permit to do so); Brubaker v. Bd. of Cty. Comm'rs, 652 P.2d 1050, 1060 (Colo. 1982) (county's denial of special use permit to conduct test drilling conflicted with use of federal lands authorized by federal legislation and was preempted); Town of Colchester v. Reduction Assocs., Inc., 34 Conn.Supp. 177, 382 A.2d 1333, 1336 (1977) (town could not enforce zoning regulation prohibiting the disposal of unbaled waste because it was in "direct conflict" and preempted by a state agency's permit to allow disposal of unbaled waste); Bannum, Inc. v. Dist. of Columbia Bd. of Zoning Adjustment, 894 A.2d 423, 432–33 (D.C. Ct. App. 2006) (local government's denial of building permit was not preempted by federal law because applicant could comply with both federal and local requirements); Tumino v. Long Beach Twp., 319 N.J.Super. 514, 725 A.2d 1173, 1180 (Ct. App. Div. 1999) (state department's granting of permit to build dock preempted township's ordinance and denial of local building permit).

■ [¶ 9] Chapter 38–08, N.D.C.C., the "Act for the Control of Gas and Oil Resources[,] equipped the Industrial Commission with comprehensive powers to reg-

ulate oil and gas development" in this state. Cont'l Res., Inc. v. Farrar Oil Co., 1997 ND 31, ¶ 12, 559 N.W.2d 841. "The Commission's powers are continuous ... and are exclusive." Egeland v. Cont'l Res., Inc., 2000 ND 169, ¶ 11, 616 N.W.2d 861 (internal citations omitted); see also Amerada Hess Corp. v. Furlong Oil & Minerals Co., 348 N.W.2d 913, 916 (N.D. 1984). Because this is a declaratory judgment action, we interpret the law as it currently exists. See Ramsey Cty., 2008 ND 175, ¶¶ 22–25, 755 N.W.2d 920.

[¶ 10] Section 38–08–04, N.D.C.C., provides in part:

"The commission has continuing jurisdiction and authority over all persons and property, public and private, necessary to enforce effectively the provisions of this chapter. The commission has authority, and it is its duty, to make such investigations as it deems proper to determine whether waste exists or is imminent or whether other facts exist which justify action by the commission. The commission has the authority:

. . . .

2.  To regulate:

    a.  The drilling, producing, and plugging of wells, the restoration of drilling and production sites, and all other operations for the production of oil or gas.

    . . . .

    e.  Disposal of saltwater and oilfield wastes.

    (1)  The commission shall give all affected counties written notice of hearings in such matters at least fifteen days before the hearing.

    (2)  The commission may consider, in addition to other authority granted under this section, safety of the location and road access to saltwa-

ter disposal wells, treating plants, and all associated facilities."

[¶ 11] A "treating plant" is defined as:

"[A]ny plant permanently constructed or portable used for the purpose of wholly or partially reclaiming, treating, processing, or recycling tank bottoms, waste oils, drilling mud, waste from drilling operations, produced water, and other wastes related to crude oil and natural gas exploration and production."

N.D. Admin. Code § 43–02–03–01(52). Administrative regulations relating to treating plants, including siting requirements, are contained in N.D. Admin. Code §§ 43–02–03–51 through 51.4. According to the Commission the "purpose of a treating plant is to process waste to separate the liquids and solids and to recover and treat any salvageable oil for sale."

[¶ 12] The County argues N.D.C.C. § 38–08–04(2) does not authorize the Commission to regulate treating plants because a treating plant does not actually "dispose" of anything. The County, however, recognizes that "recovery of oil [is] the reason for operating the facility." In interpreting statutes, we look first to the plain language and give each word its ordinary meaning. See Minnkota Power Co-op., Inc. v. Anderson, 2012 ND 105, ¶ 8, 817 N.W.2d 325. "We will not construe a statute to create an ambiguity or exception when none exists in the statute's plain language." Id.

[¶ 13] Section 38–08–04(2), N.D.C.C., is not ambiguous. The Commission has the express authority under N.D.C.C. § 38–08–04(2)(a) to regulate "all other operations for the production of oil or gas," and a "treating plant" qualifies as an "other operation[ ]" for the production of oil and gas. Indeed, N.D.C.C. § 38–08–04(2)(e)(2) specifically mentions "treating plants" as a consideration for the Commission in regulating the disposal of saltwater and oilfield

wastes. Therefore, the Commission has statutory authority to regulate treating plants.

[¶ 14] We have explained:

"Field preemption occurs when [the Legislature] intends [state] law to occupy the entire field covered by the [state] statute, to the exclusion of [local] regulation of the same subject matter. Such an intent may be inferred when the scheme of [state] regulation is so pervasive as to create an inference that [the Legislature] left no room for the [local governing bodies] to supplement it, or when the [state] interest in the field is so dominant that it will be assumed to preclude enforcement of [local] laws on the same subject."

FreeEats, 2006 ND 84, ¶ 25, 712 N.W.2d 828 (internal citations omitted).

[¶ 15] We agree with the district court's conclusion "the North Dakota legislature intended that the North Dakota Industrial Commission would 'occupy the field' of the regulation of oil and gas waste treatment plants and, therefore, has exclusive jurisdiction of the issue of the location of oil and gas waste treating plants." The comprehensiveness of the state laws and regulations leaves no room for doubt that the Legislature intended to preclude enforcement of local laws on the siting of waste treating plants.

[¶ 16] Although the County argues it has "shared jurisdiction" with the Commission over the location of the treating plant based in part on the permit's requirement that the treating plant "comply with all applicable local . . . laws and regulations," the Commission's order nevertheless would supercede any county zoning requirements. See, e.g., Matter of J.R.B., 715 P.2d 1170, 1173 (Alaska 1986) (conflict occurs when "it is impossible to comply simultaneously with the dual regulation"); Spradlin v. Acadia–St. Landry Med.

Found., 758 So.2d 116, 122 (La. 2000) ("dual regulation of the same conduct is permitted as long as there is no conflict"); Billings Assoc. Plumbing, Heating and Cooling Contractors v. State Bd. of Plumbers, 184 Mont. 249, 602 P.2d 597, 599 (1979) ("Dual regulation of an activity by a municipality and the state is not prohibited as long as the municipal regulation does not conflict with the state regulation"); State ex rel. Brooks v. Cook, 84 Mont. 478, 276 P. 958, 961 (1929) ("Where there is room for concurrent jurisdiction, there is no objection to the state and a municipality legislating upon the same subject, so long as the municipal ordinance does not conflict with the state law."). We conclude the County's zoning requirements are preempted by state law and the Commission's order in this case.

[¶ 17] The County argues that, for various reasons, it is better suited than the Commission to regulate the location of treating plants within the county. Public policy is declared by the legislature's action, and the public policy arguments raised by the County here are issues for the legislature to consider. See, e.g., Aurora Med. Park, LLC v. The Kidney and Hypertension Ctr., PLC, 2010 ND 122, ¶ 12, 784 N.W.2d 151.

[¶ 18] We conclude the County has no authority through its zoning regulations to veto the Commission's siting of an oil and gas waste treating plant.

### III

[¶ 19] We do not address other arguments raised, because they are either unnecessary to the decision or are without merit. The judgment is affirmed.

[¶ 20] Daniel J. Crothers

Lisa Fair McEvers

Carol Ronning Kapsner

Dale V. Sandstrom

Gerald W. VandeWalle, C.J.

[¶ 21] The Honorable Jerod E. Tufte was not a member of the Court when this case was heard and did not participate in this decision. Surrogate Judge Dale V. Sandstrom, sitting.