2017 ND 72

**NANDAN, LLP, Plaintiff and Appellant**

**and**

**Border States Paving, Inc., Plaintiff**

**v.**

**CITY OF FARGO, a municipal corporation, Defendant and Appellee**

**No. 20160166**

Supreme Court of North Dakota.

Filed 03/30/2017

Joseph A. Turman, P.O. Box 110, Fargo, N.D. 58107–0110, for plaintiff and appellant.

Jane L. Dynes (argued) and Ronald H. McLean (on brief), P.O. Box 6017, Fargo, N.D. 58108–6017, for defendant and appellee.

VandeWalle, Chief Justice.

[¶1] Nandan, LLP appealed from a summary judgment and an order denying its N.D.R.Civ.P. 60(b) motion for relief from judgment, ruling that road and utility repairs were incidental to the repair of a water and sewer system damaged by a landslide in Fargo, and that the City of Fargo was therefore not required to pass a resolution of necessity to create an improvement district to fund the repairs. We affirm, because Nandan failed to raise a genuine issue of material fact precluding summary judgment.

I

[¶2] On May 31, 2012, a landslide occurred along 32nd Street North in Fargo near where Nandan and Border States Paving, Inc., owned property. The landslide damaged a water main and storm sewer; the street; and Drain No. 10, which is owned, operated, and maintained by the Southeast Cass Water Resource District. The road and adjacent water and sewer lines are owned by Fargo. Fargo created an improvement district to fund repairs to the drain, water main, and sanitary sewer systems on a portion of the drain without adopting a resolution of necessity. Fargo later entered into a joint powers agreement with the District which set forth the parties' obligations for the repairs.

[¶3] After Border States and Nandan's protests to their special assessments were rejected by the city, they sued Fargo alleging the city improperly created the improvement district because it did not adopt a resolution of necessity and provide a right to protest. The district court granted Fargo's N.D.R.Civ.P. 12(b)(6) motion to dismiss for failure to state a claim upon which relief could be granted, concluding

Nandan and Border States had no right to protest under N.D.C.C. § 40–22–06 because the city let the bids for project construction, or under N.D.C.C. § 40–22–15 because the project constituted a water or sewer improvement for which a resolution of necessity was not required.

[¶ 4] On appeal, we affirmed the district court's decision in part, reversed in part, and remanded for further proceedings. See Nandan, LLP v. City of Fargo, 2015 ND 37, 858 N.W.2d 892. We held that Fargo was not required to adopt a resolution of necessity and provide a right to protest under N.D.C.C. § 40–22–06 because the city bid out the project and entered into the construction contract. Nandan, at ¶ 21. However, we reversed the court's holding that N.D.C.C. § 40–22–15 did not provide a right of protest and remanded for further proceedings, stating:

> According to the statements in the exhibits attached to the amended complaint, the improvement district included street repairs, utilities and other items not specifically included in the description of a water or sewer improvement under N.D.C.C. § 40–22–01(1) (under which a resolution of necessity would not be required under N.D.C.C. § 40–22–15). It is also unknown from the pleadings whether the other repairs were incidental to the water and sewer repairs. See N.D.C.C. § 40–22–01 (stating a municipality may include items of work and materials which in its judgment are necessary or reasonably incidental to the completion of an improvement project). If the other repairs were incidental to the water and sewer repairs under N.D.C.C. § 40–22–01, a resolution declaring the improvements were necessary would not be required under N.D.C.C. § 40–22–15. If the other repairs were a type of improvement as described in N.D.C.C. § 40–22–01(2) through (5), and were not incidental to the water and sewer repairs, a resolution of necessity would have been required to create the improvement district, and Border States would have had a right to protest the creation of the improvement district under N.D.C.C. § 40–22–17. In viewing the pleadings in a light most favorable to Border States, we cannot conclude with certainty that Border States' amended complaint fails to state a claim upon which relief can be granted. We hold the district court erred in concluding N.D.C.C. § 40–22–15 did not provide Border States a right to protest the creation of the improvement district. We therefore reverse that part of the district court's judgment and remand for further proceedings.

> In its order granting Fargo's motion to dismiss, the district court concluded Border States did not have a right to protest the project under N.D.C.C. § 40–22–15. Without further analysis or explanation, the district court apparently concluded the project constituted a sewer or water improvement as described in N.D.C.C. § 40–22–01(1). On remand, the district court must analyze N.D.C.C. § 40–22–01 and consider any additional evidence offered by the parties in deciding whether the project constituted a sewer or water improvement. Specifically, the district court must decide whether the other repairs funded by Improvement District No. 6237 were incidental to the water and sewer repairs or whether they were a type of improvement described in N.D.C.C. § 40–22–01(2) through (5).

Nandan, at ¶¶ 30–31. After our decision was rendered, Border States stipulated to dismissal from the action.

[¶ 5] On remand, Fargo moved for summary judgment against Nandan, arguing the street repairs and utility work per-

formed were incidental to the water and sewer repairs under N.D.C.C. § 40–22–01. Fargo provided evidence of the costs of various categories of repairs made during the project. Fargo also provided affidavits from a city engineer and a District engineer who worked on the project. Nandan argued that the work completed on Drain No. 10 was not part of the city's storm sewer system under N.D.C.C. § 40–22–15. The court noted the definition of a water or sewer improvement under N.D.C.C. § 40–22–01(1) and said:

> It is undisputed that Cass County Drain 10 is part of the City of Fargo's storm sewer system. The city directs storm water through culverts, pipes and channels to Drain 10 through which the storm water is then directed north and east of the Red River. In fact, Nandan concedes that Drain 10 is a water and sewer improvement under this definition. It argues, however, that the project at issue should not be considered a City of Fargo project.

The court further noted the issue whether the Drain No. 10 improvement project is a city project was not part of this Court's remand, and the specific remand required only a determination whether "the street repairs and utility work [were] incidental to the water and sewer repairs?" The court said:

> Here, the Court concludes that there are no genuine issues of material fact. It is undisputed that the road repairs on 32nd Street North were incidental to the work necessary to repair the water and sewer systems that were damaged by the landslide.
>
> Therefore, this project qualifies as a water or sewer improvement pursuant to N.D. Cent. Code § 40–22–15, and therefore, a resolution of necessity was not required.

[¶ 6] Nandan moved for relief from judgment under N.D.R.Civ.P. 60(b)(6). The district court once again rejected Nandan's argument that Drain No. 10 cannot constitute a water or sewer project under N.D.C.C. § 40–22–01(1). The court ruled that, under N.D.C.C. § 40–22–01(2) through (5), Drain No. 10 "does not constitute the improvement of a street system, improvement of boulevards, was not acquired land for flood control, and was not land acquired for parking." Finding no genuine issues of material fact that any of the repairs were not actually incidental to the water and sewer project, the court denied the motion for relief from judgment.

## II

[¶ 7] Nandan argues the district court erred in ruling a resolution of necessity was not required under N.D.C.C. § 40–22–15, because the repairs to Drain No. 10 do not qualify as a water or sewer improvement under N.D.C.C. § 40–22–01.

[¶ 8] Our standard of review for summary judgments under N.D.R.Civ.P. 56 is well-established:

> Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. A party moving for summary judgment has the burden of showing there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. . . . Whether the district court properly granted summary judgment is a question of law which we review de novo on the entire record.

Burk v. State, 2017 ND 25, ¶ 7, 890 N.W.2d 535 (quoting Tank v. Citation Oil

& Gas Corp., 2014 ND 123, ¶ 8, 848 N.W.2d 691).

## A

[¶ 9] The thrust of Nandan's argument is based on statutory construction. Summary judgment generally is an appropriate method for resolving statutory construction issues. See Envtl. Driven Solutions, LLC v. Dunn Cty., 2017 ND 45, ¶ 6, 890 N.W.2d 841. Nandan argues that under the plain language of N.D.C.C. § 40–22–01(1) Drain No. 10 cannot be considered part of a water supply or sewerage system, nor can it be considered "incidental to such an improvement." Fargo argues this issue was implicitly decided in the last appeal, was not part of our mandate in Nandan, 2015 ND 37, ¶ 31, 858 N.W.2d 892, and should not be addressed. See Investors Title Ins. Co. v. Herzig, 2013 ND 13, ¶ 10, 826 N.W.2d 310 (mandate rule requires district court follow pronouncements of appellate court on legal issues in subsequent proceedings and carry its mandate into effect according to its terms).

[¶ 10] Even if our mandate was unclear, the district court nevertheless ruled in its summary judgment decision that Drain No. 10 "is part of the City of Fargo's storm sewer system" and the project "qualifies as a water or sewer improvement." Resolution of this issue was a necessary prerequisite to deciding whether the other repairs were incidental or were a type of improvement described in N.D.C.C. § 40–22–01(2) through (5). We will address the issue explicitly.

[¶ 11] Section 40–22–01(1), N.D.C.C., provides:

Any municipality, upon complying with the provisions of this chapter, may defray the expense of any or all of the following types of improvements by special assessments:

1. The construction of a water supply system, or a sewerage system, or both, or any part thereof, or any improvement thereto or extension or replacement thereof, including the construction and erection of wells, intakes, pumping stations, settling basins, filtration plants, standpipes, water towers, reservoirs, water mains, sanitary and storm sewer mains and outlets, facilities for the treatment and disposal of sewage and other municipal, industrial, and domestic wastes, and all other appurtenances, contrivances, and structures used or useful for a complete water supply and sewerage system.

[¶ 12] Nandan argues a "drain" cannot be included under the statute because "a 'drain' has nothing to do with a 'water supply system' or a 'sewerage system.'" But we must give words in a statute their plain, ordinary, and commonly understood meaning, and consider the context in which they are used and the purpose which prompted their enactment. See Preference Pers., Inc. v. Peterson, 2006 ND 35, ¶ 6, 710 N.W.2d 383. Section 40–22–01(1), N.D.C.C., specifically refers to "storm sewer mains and outlets" and "all other appurtenances, contrivances, and structures used or useful for a complete water supply and sewerage system." In Kirkham, Michael & Assocs. v. City of Minot, 122 N.W.2d 862, 863 (N.D. 1963), this Court adopted the following dictionary definition to interpret the word "sewer" for purposes of N.D.C.C. § 40–22–15:

"A ditch or surface drain; an artificial usually subterranean conduit to carry off water and waste matter (as surface water from rainfall, household waste from sinks or baths, or waste water from industrial works)."

(quoting Webster's Third New International Dictionary (1961)). The Court ruled the term "sewer" under N.D.C.C. § 40–22–15 included both storm and sanitary sewers, and relied on use of the term "sewerage system" in N.D.C.C. § 40–22–01(1) to further support its conclusion. Kirkham, at 864. Cf. Hector v. City of Fargo, 2012 ND 80, ¶ 19, 815 N.W.2d 240 (noting the "drain and water retention pond are a part of the storm sewer system"); Western Nat. Mut. Ins. Co. v. Univ. of North Dakota, 2002 ND 63, ¶ 10, 643 N.W.2d 4 ("Sewage is ordinarily defined as waste matter carried off by sewers or drains, and sewer means a pipe or drain, usually underground, used to carry off water and waste matter."); Freeman v. Trimble, 21 N.D. 1, 11–12, 129 N.W. 83, 87–88 (1910) ("a village may lawfully extend its sewers beyond its limits for the purpose of securing a suitable outlet for the same" and the "extention and outlet only serve the purpose of giving practical effect to the sewer or system of sewerage").

[¶ 13] Nandan argues because the statute must be harmonized with other statutes concerning "drains" and related "assessments" under N.D.C.C. chs. 61–16.1 and 61–21, N.D.C.C. § 40–22–01(1) cannot be interpreted to include "drains." First, water resource districts are governed by N.D.C.C. ch. 61–16.1, and the water resource board is not a party in this case to challenge its assessment procedures. Second, water resource districts are authorized to undertake "[p]roject[s]" which are defined as:

any undertaking for water conservation, flood control, water supply, water delivery, erosion control and watershed improvement, drainage of surface waters, collection, processing, and treatment of sewage, or discharge of sewage effluent, or any combination thereof, including incidental features of any such undertaking.

N.D.C.C. § 61–16.1–02(8). Furthermore, water resource districts are authorized to:

Plan, locate, relocate, construct, reconstruct, modify, extend, improve, operate, maintain, and repair sanitary and storm sewer systems, or combinations thereof, including sewage and water treatment plants, and regulate the quantity of sewage effluent discharged from municipal lagoons; and contract with the United States government, or any department or agency thereof, or any private or public corporation or limited liability company, the government of this state, or any department, agency, or political subdivision thereof, or any municipality or person with respect to any such systems.

N.D.C.C. § 61–16.1–09(19).

[¶ 14] We see no conflict created by interpreting N.D.C.C. § 40–22–01(1) to include a " 'ditch or surface drain.' " Kirkham, 122 N.W.2d at 863; see also N.D.C.C. § 40–05–01(12) (municipalities have the power to repair "sewers, tunnels, and drains"). Nandan has cited no authority preventing a municipality from using a county drain as part of, or as an outlet for, its storm sewer system, or preventing a water resource district from executing a joint powers agreement to repair a commonly used drain.

[¶ 15] Nandan also argues there is a genuine issue of material fact whether Drain No. 10 is part of Fargo's storm sewer system.

[¶ 16] Fargo introduced an affidavit from its engineer assigned to manage the repairs made on the improvement district, stating:

Cass County Drain #10 is part of the City of Fargo's Storm Sewer System. The City of Fargo directs storm water into Drain #10 through pipes, culverts and channels. Drain #10 then carries

that storm water north and east to be released in to the Red River of the North. On May 31, 2012, Drain #10 was an open channel at the landslide site.

. . . .

Based on my experience working as an engineer for the City of Fargo, Improvement District #6237 is correctly characterized as a project to replace elements of the City water system and City storm sewer system damaged by the landslide. The installation of the box culverts in Drain #10 at the landslide site is an improvement to Drain #10, an integral part of the City's storm sewer system. It was reasonable to include the necessary, but comparatively minor, work of re-aligning and repairing 32nd Street North and the damaged private sanitary sewer line in Improvement District #6237.

[¶ 17] In response, Nandan retained an engineer and submitted his affidavit stating

Based on my review of the materials as noted, it is my professional opinion that the project, which is the subject matter of this action, is a reconstruction of Drain No. 10 to reduce future chances of slide failure of the slope in the area. The water main, sanitary sewer main and 32nd Street North repairs were only minor and incidental to the improvements to Drain No. 10.

While this opinion points out that most of the work on the project was performed on Drain No. 10, it does not dispute the evidence that Drain No. 10 is part of Fargo's storm sewer system, or that the project did not exceed what was necessary to fix the drain for storm sewer purposes.

[¶ 18] We conclude there are no genuine issues of material fact and the district court did not err in ruling as a matter of law that Drain No. 10 is part of Fargo's storm sewer system and that the project constituted a sewer or water improvement.

B

[¶ 19] Nandan argues work performed on Drain No. 10 was not "incidental" to work performed on Fargo's storm sewer system. Because we have concluded Drain No. 10 is part of Fargo's storm sewer system, we conclude this inquiry is inapt and irrelevant.

[¶ 20] In Nandan, 2015 ND 37, ¶ 30, 858 N.W.2d 892, we said that "[i]f the other repairs were a type of improvement as described in N.D.C.C. § 40–22–01(2) through (5), and were not incidental to the water and sewer repairs, a resolution of necessity would have been required to create the improvement district, and Border States would have had a right to protest the creation of the improvement district under N.D.C.C. § 40–22–17." Section 40–22–01(2) through (5), N.D.C.C., provides:

2. The improvement of the municipal street system and any part thereof, including any one or more of the processes of acquisition, opening, widening, grading, graveling, paving, repaving, surfacing with tar, asphalt, bituminous, or other appropriate material, resurfacing, resealing, and repairing of any street, highway, avenue, alley, or public place within the municipality, and the construction and reconstruction of overhead pedestrian bridges, pedestrian tunnels, storm sewers, curbs and gutters, sidewalks, and service connections for water and other utilities, and the installation, operation, and maintenance of streetlights and all types of decorative streetlighting, including but not restricted to Christmas streetlighting decorations.

3. The improvement of boulevards and other public places by the planting

of trees, the construction of grass plots and the sowing of grass seed therein, and the maintenance and preservation of such improvements by the watering of such trees and grass, the cutting of such grass, and the trimming of such trees, or otherwise in any manner which may appear necessary and proper to the governing body of the municipality.

4. The acquiring of the necessary land and easements and the construction of the necessary works, within and without the municipality, for flood protection of properties within the municipality.

5. The acquiring or leasing of the necessary property and easements and the construction of parking lots, ramps, garages, and other facilities for motor vehicles.

In planning an improvement project of a type specified in any one of the foregoing subsections, the governing body may include in such plans any and all items of work and materials which in its judgment are necessary or reasonably incidental to the completion of an improvement project of such type.

[¶ 21] Fargo introduced in evidence the final cost summary for the project showing Drain No. 10 reconstruction totaled $1,062,246.69; other storm sewer system repair totaled $21,664.61; water system repair totaled $53,816.41; private sanitary sewer line repair totaled $24,599.66; and street repair totaled $19,916.83. The city's engineer in his affidavit stated it was "reasonable" to include these "comparatively minor" repairs in the improvement district. The engineer also stated no "boulevards" or "public places" were created; no easements were acquired in connection with the project; no additional real property was acquired through purchase or lease; and no parking lots, garages, ramps or other facilities for motor vehicles were constructed.

[¶ 22] Based on this evidence, the district court concluded "the street repairs, utilities, and other items not specifically included in the description of the water or sewer improvement, were incidental to the water and sewer repairs." The court further ruled the project did "not constitute the improvement of a street system, improvement of boulevards, was not acquired land for flood control, and was not land acquired for parking." Nandan does not challenge the court's determinations on these remanded issues.

[¶ 23] We conclude the district court did not err in ruling as a matter of law that the project qualified as a water or sewer improvement under N.D.C.C. § 40–22–15, and therefore, a resolution of necessity was not required.

### III

[¶ 24] Other arguments raised need not be addressed because they are unnecessary to this decision. The judgment and order are affirmed.

[¶ 25] Gerald W. VandeWalle, C.J.

Carol Ronning Kapsner

Lisa Fair McEvers

Daniel J. Crothers

Dale V. Sandstrom, S.J.

[¶ 26] The Honorable Jerod E. Tufte was not a member of the Court when this case was heard and did not participate in this decision. Surrogate Judge Dale V. Sandstrom, sitting.